**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-4354
_____

D.C. Docket No. 94-6113-CR-FERGUSON


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

LEE W. HOFFER, M.D.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(November 21, 1997)**


Before ANDERSON, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

The defendant, Lee Hoffer, pleaded guilty to violating 21 U.S.C. § 846 by conspiring to dispense controlled substances in violation of 21 U.S.C. § 841(a)(1), and to tampering with a witness in violation of 18 U.S.C. § 1512. After a sentencing hearing, the district court determined that Hoffer had an adjusted offense level of thirty-one and a criminal history category of I, which under the United States Sentencing Guidelines resulted in a sentencing range of 108 to 135 months. However, the district court departed downward four levels to an offense level of twenty-seven, which resulted in a guidelines range of 70 to 87 months. The court imposed a sentence of seventy months imprisonment, a $10,000 fine, and three years of supervised release.

The district court justified its downward departure on two grounds. The first was that, as part of his plea agreement, Hoffer "los[t] [the] privilege to practice medicine." The second basis for the departure was that, also as part of his plea agreement, Hoffer "voluntar[ily] disgorged" $50,000 in proceeds from his illegal activities. The government has appealed the district court's decision to depart downward. Because we conclude that the district court abused its discretion in departing downward for the two stated reasons, we vacate and remand for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

Lee Hoffer is a physician who, until recently, was licensed to practice medicine in Florida. In 1987, he opened a medical office in Coral Springs, Florida. In 1992, after a routine pharmacy

2

inspection revealed that Hoffer had written an excessive number of prescriptions for controlled substances, agents from the DEA and the Broward County Sheriff's Office began investigating him. The investigation revealed evidence that Hoffer regularly provided an accomplice with controlled substance prescriptions. The accomplice would fill the prescriptions, sell them on the street, and return half the proceeds to Hoffer. Hoffer provided his accomplice with a pager to maintain their "business" relationship, and he met with him an average of twice a week, collecting around $1,000 at each meeting. Hoffer's controlled substance distribution "business" lasted at least a year.

In 1994, the United States Attorney presented Hoffer's case to a federal grand jury in the Southern District of Florida. The grand jury subpoenaed a number of witnesses including the wife of Hoffer's accomplice. Before his accomplice's wife testified, Hoffer attempted to persuade her to lie to the grand jury. The government tape recorded that attempt.

The grand jury returned a seven-count indictment. Count I charged Hoffer with a violation of 21 U.S.C. § 841(a)(1), conspiracy to distribute and dispense controlled substances. Count II charged him with a violation of 18 U.S.C. § 1512, corruptly persuading another person with the intent to influence the testimony of that person in an official proceeding. Counts III - VII charged Hoffer with additional drug distribution crimes.

Hoffer entered into a plea agreement with the government. Pursuant to the agreement, Hoffer entered a plea of guilty to

3

Counts I and II and stipulated that he would: (1) voluntarily relinquish his license to practice as a physician in Florida and in all other states, territories and districts of the United States; (2) never again apply to be licensed as a physician; (3) execute agreements of voluntary withdrawal from practice as a physician in Florida and in all other states, territories and districts of the United States; and (4) not contest the civil forfeiture of $50,000.00 he had acquired as proceeds from the sale of drugs. In exchange, the government dismissed Counts III - VII of the indictment and stipulated to the amount of drugs Hoffer had dispensed and distributed.

Prior to his sentencing hearing, Hoffer filed a motion, pursuant to 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, for downward departure from the applicable sentencing guideline. In his motion, Hoffer contended that he was entitled to a downward departure on the following grounds: (1) exceptional acceptance of responsibility; (2) high prospects of rehabilitation; (3) aberrant behavior; (4) voluntary disgorgement of proceeds of criminal activity; (5) the "safety valve" provision, U.S.S.G. § 5K1.1; (6) loss of occupational licensure; and (7) the totality of these factors.

At Hoffer's sentencing hearing, the district court determined that under U.S.S.G. § 2D1.1 (the guideline section applicable to drug manufacturing and trafficking offenses), Hoffer had a base

4

offense level of thirty.[1]  To that base offense level, the district court added, pursuant to § 3B1.3, two levels for abusing a position of trust.  The district court also added, pursuant to § 3C1.1, two levels for obstructing the administration of justice.  Finally, the court subtracted, pursuant to § 3E1.1, three levels for acceptance of responsibility.  The net result was an adjusted offense level of thirty-one.

After the court determined Hoffer's adjusted offense level, Hoffer argued, in accordance with his earlier motion, that he should receive a downward departure from the sentencing guidelines. The government responded that Hoffer was not entitled to a downward departure for exceptional acceptance of responsibility, that he did not qualify for the "safety valve" provision, that voluntary disgorgement of proceeds from criminal activity was not an appropriate basis for departure, and that a downward departure for loss of occupation or license was not warranted.

After hearing testimony from Hoffer, his witnesses, and the government's witnesses, the district court noted that case law did not support a downward departure on the basis of exceptional acceptance of responsibility.  However, the court went on to find that Hoffer's loss of privilege to practice medicine and voluntary disgorgement of proceeds made his case "atypical," warranting a downward departure of four levels.  After adjusting his offense

---

[1]In making that determination, the district court relied on the parties' stipulation in the plea agreement that Hoffer had dispensed and/or distributed an amount of Schedule II controlled substances which, under the guidelines, was equivalent to more than 700 kilograms, but less than 1000 kilograms, of marijuana.

level to twenty-seven, the court sentenced Hoffer to imprisonment for a term of seventy months on both Count I and Count II, to be served concurrently. Additionally, the court imposed a fine of $10,000 and ordered three years of supervised release at the conclusion of Hoffer's term of imprisonment.

Following the pronouncement of sentence, the district court asked, "did the defendant or counsel object to any finding made or the manner in which the sentence has been pronounced?" The court did not ask the government whether it had any objections to the sentence. At that point neither Hoffer nor the government stated any objections to the sentence, although the government had previously stated its position opposing the downward departure. The government has appealed the sentence imposed by the district court.

## II. STANDARD OF REVIEW

In Koon v. United States, ___ U.S. ___, ___, 116 S. Ct. 2035, 2043 (1996), the Supreme Court held that an appellate court reviewing a district court's departure from the sentencing guidelines should ask "whether the sentencing court abused its discretion." The Court explained that while an abuse of discretion review standard preserves the sentencing court's "traditional discretion," it does not render appellate review an empty exercise. Id. at ___, 116 S. Ct. at 2046. A sentencing court's factual findings continue to be afforded substantial deference, but a mistake of law is, by definition, an abuse of discretion. Id. at ___, 116 S. Ct. at 2047.

Whether to depart from the sentencing guidelines is a decision which requires a district court to make both factual and legal findings.  Under 18 U.S.C. § 3553(b), a district court may depart from the applicable guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  Thus, to depart from the sentencing guidelines, a district court must make two fundamental determinations: (1) what, if any, factor makes the case "atypical" (i.e., unlike the typical case found under the applicable sentencing guideline), and (2) should that factor result in a different sentence.  The first of these determinations is factual in nature, see Koon, ___ U.S. at ___, 116 S. Ct. at 2046-47, while the second involves both legal and factual considerations, see id. at ___, 116 S. Ct. at 2047.

Cases implicating a factor not adequately taken into consideration by the Sentencing Commission are said to fall outside the "heartland" of typical cases embodying the conduct described in the applicable guideline.  See U.S.S.G. ch.1, pt. A, intro. comment. 4(b).  A district court determines whether a case falls outside the heartland by making a refined assessment of the facts of the case, comparing those facts to the facts of other cases falling within the guideline's heartland.  See Koon, ___ U.S. at ___, 116 S. Ct. at 2046-47.

To determine whether a factor which takes a case outside the

7

heartland should result in a different sentence, a district court must first decide whether the factor is forbidden, encouraged, discouraged, or unaddressed by the guidelines as a potential basis for departure. See id. at ___, 116 S. Ct. at 2045. If a factor is forbidden, see, e.g., U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion and socio-economic status), a district court cannot use it to depart from the applicable guideline; to do so would be a per se abuse of discretion. See Koon, ___ U.S. at ___, ___, 116 S. Ct. at 2045, 2047. If a factor is encouraged, see, e.g., § 5K2.1 (causing death), a court is authorized to depart from the applicable guideline if the guideline does not already take that factor into account. See Koon, ___ U.S. at ___, 116 S. Ct. at 2045. If a factor is discouraged, see, e.g., § 5H1.2 (education and vocational skills), or is an encouraged factor already taken into account by the applicable guideline, a district court may depart only if the factor is present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present.[2] See Koon, ___ U.S. at

---

[2]The guidelines provide the following examples to illustrate the use of encouraged and discouraged factors in the departure decision:

> [D]isruption of a governmental function, § 5K2.7, [an encouraged factor], would have to be quite serious to warrant departure from the guidelines when the applicable offense guideline is bribery or obstruction of justice. When the theft offense guideline is applicable, however, and the theft caused disruption of a governmental function, departure from the applicable guideline range more readily would be appropriate. Similarly, physical injury would not warrant departure from the guidelines when the robbery offense guideline is applicable because the robbery guideline includes a specific adjustment

8

___, 116 S. Ct. at 2045.

Finally, a district court may depart on the basis of a factor not addressed by the Sentencing Commission if it finds, "after considering the 'structure and theory of both the relevant individual guidelines and the Guidelines taken as a whole,'" that the factor takes the case out of the applicable guideline's heartland. Id. at ___, 116 S. Ct. at 2045 (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993)). However, a district court departing on the basis of an unenumerated factor should bear in mind the Commission's expectation that such departures will be "highly infrequent." Id. at ___, 116 S. Ct. at 2045 (citing U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)).

We note that a district court is required to perform the foregoing analysis only when its decision to depart is not based on specific guidance contained within the guidelines. If the district court's departure is based upon a suggestion within the applicable guideline(s), this analysis is unnecessary. See U.S.S.G. ch. 1, pt. A., intro. comment. 4(b).

On appeal, our review of a district court's decision to depart from the sentencing guidelines is a three-step process. First, we deferentially review the district court's determination of whether the facts of a case take it outside the heartland of the applicable

---

based on the extent of any injury. However, because the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured.

U.S.S.G. § 5K2.0.

9

guideline.  See Koon, ___ U.S. at ___, 116 S. Ct. at 2047 ("District Courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do."). Second, we independently determine whether the departure factor relied upon by the district court has been categorically proscribed, is encouraged, encouraged but taken into consideration within the applicable guideline, discouraged, or not addressed by the Commission.  See id. at ___, 116 S. Ct. at 2047 (stating that an appellate court need not defer to the district court on questions of law).  If the district court has relied upon a forbidden factor, it necessarily has abused its discretion.  If the factor relied upon is not forbidden, we reach the third step of our review process.  We review with deference the remaining factually sensitive findings of the district court, e.g., whether a discouraged factor is present to such an extraordinary degree that departure is warranted.  See id. at ___, ___, 116 S. Ct. at 2047, 2050.[3]

_____

[3]In United States v. Taylor, 88 F.3d 938 (11th Cir. 1996), our first post-Koon review of a district court's decision to depart from the sentencing guidelines, we recognized that Koon had changed the standard of review and the analysis that applies when reviewing departure decisions.  See id. at 945-46.  We consistently applied the Koon standard of review and analysis in the next three guideline departure cases that followed.  See United States v. Bernal, 90 F.3d 465, 467-68 (11th Cir. 1996); United States v. Santos, 93 F.3d 761, 763 (11th Cir. 1996), cert. denied, ___ U.S. ___; 117 S. Ct. 1437 (1997); United States v. Bristow, 110 F.3d 754, 757-59 (11th Cir. 1997).

However, in United States v. Gunby, 112 F.3d 1493 (11th Cir. 1997), we stated that when reviewing a district court's decision to depart upward from the sentencing guidelines we should ask the

10

following three questions:

> (1) Was the aggravating circumstance cited by the district court adequately taken into consideration by the Sentencing Commission in formulating the guidelines?

> (2) If adequate consideration was not given to the circumstance, was consideration of the circumstance consistent with the goals of the sentencing guidelines?

> (3) If the circumstance was properly taken into account, was the extent of the departure from the guideline range reasonable?

112 F.3d at 1499 (citing United States v. Shuman, 902 F.2d 873, 875-76 (11th Cir. 1990)). We stated that this three-part inquiry from pre-Koon case law was consistent with Koon. Id. at 1499 n.8.

A close examination of the second Gunby question reveals that it may well be inconsistent with the Supreme Court's decision in Koon and with our pre-Gunby decisions utilizing the Koon analysis to review departure decisions. In none of our pre-Gunby, post-Koon decisions did we inquire whether the factor relied upon by the district court as a basis for departure was consistent with the goals of the Guidelines. See Taylor, 88 F.3d at 945-46; Bernal, 90 F.3d at 467-68; Santos, 93 F.3d at 763; Bristow, 110 F.3d at 757-59. Nor have we done so in any of our post- Gunby guideline departure decisions. See United States v. Lewis, 115 F.3d 1531, 1538-39 (11th Cir. 1997); United States v. White, 118 F.3d 739, 741-42 (11th Cir. 1997); United States v. Phillips, 120 F.3d 227, 230-32 (11th Cir. 1997). Moreover, in Koon itself, the Supreme Court expressly rejected the government's suggestion that courts should test potential departure factors against broad sentencing goals and reject those factors that are inconsistent with these goals. ___ U.S. at ___, 116 S. Ct. at 2051. The Court stated: "We conclude, then, that a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor." Id. at ___, 116 S. Ct. at 2051.

Because the second Gunby question appears to be inconsistent with Koon and our pre-Gunby decisions applying the Koon analysis, we do not utilize the Gunby analysis. Instead, we adhere to the analysis set forth in Koon, which was adopted by this Court in Taylor, and which we have expounded upon in the text previously. In United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993), we held that "it is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled

11

Having set forth the standard by which we review a sentencing court's decision to depart from the guidelines, we turn now to the merits in this case.

## III. DISCUSSION

The district court granted Hoffer a four-level downward departure on the grounds that Hoffer's loss of privilege to practice medicine and his voluntary disgorgement of proceeds from his criminal activity made his case atypical and warranted a departure. On appeal, the government contends that it was improper for the district court to depart from the sentencing guidelines on these grounds.

### A. THE "WAIVER" ISSUE

As a preliminary matter, we address Hoffer's contention that the government waived its objections to the sentence imposed by the district court because it did not state its objections at the conclusion of Hoffer's sentencing hearing. In United States v. Jones, 899 F.2d 1097, 1103 (11th Cir. 1990), overruled on other grounds, United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993) (en banc), we held that a party who, at the conclusion of the imposition of sentence, fails to articulate the grounds for objection or remains silent, waives any objection to the sentence unless such waiver would result in manifest injustice. However, in United States v. Weir, 51 F.3d 1031, 1033 (11th Cir. 1995), we

en banc, or by the Supreme Court." The first panel to interpret and apply the Koon standards was the Taylor panel, not the Gunby panel.

12

clarified <u>Jones</u> by explaining that so long as a party states its objection to the sentence at some point during the sentencing hearing, its failure to repeat the objection at the conclusion of the imposition of sentence will not result in a waiver of that objection. That clarification of the <u>Jones</u> rule is particularly applicable where, as in this case, the district court after imposing sentence did not ask the appellant if it had any objections to the sentence.

Prior to the imposition of sentence, Hoffer had argued that the court should grant him a downward departure from the applicable sentencing guideline because, among other things, he had voluntarily disgorged $50,000 in proceeds from his illegal activities and he had voluntarily given up his medical license. Hoffer maintained that those factors removed his case from the heartland of cases pertinent to the applicable guideline and, therefore, justified a downward departure from that guideline.

In response to Hoffer's loss of medicine license contention, the government countered that the legal authority cited by Hoffer did not support a downward departure, and that such a departure would be inappropriate under the circumstances of this case. The government concluded that objection by stating: "There is absolutely nothing, nothing about the facts of this case or about the personality of this man that would warrant a departure in any manner or form, your Honor." The government then went on to object that voluntary disgorgement was not an appropriate basis for the court to grant Hoffer a downward departure, either.

13

To preserve an issue for appeal, an objection must be sufficiently detailed to allow the trial court an opportunity to correct any arguable errors before an appeal is taken. See Christopher v. Cutter Lab., 53 F.3d 1184, 1192 (11th Cir. 1995). The government's objections were sufficient to allow the district court to correct any errors. See Davis v. Attaway, 757 F.2d 1227, 1242 (11th Cir. 1985) (appellate court may consider whether grounds of objection are apparent from the context). Accordingly, we hold that the government did not waive its objections to the district court's departure decision and the resulting sentence by failing to reiterate these objections after the sentence was imposed.

## B. THE "VOLUNTARY DISGORGEMENT" ISSUE

As part of his plea agreement, Hoffer agreed not to contest the government's subsequent civil forfeiture action seeking $50,000 from Hoffer as the proceeds of his illegal activities. The "voluntary disgorgement" the district court relied upon was, in fact, a civil forfeiture. The district court, at the government's request and with Hoffer's consent, specifically termed the disgorgement a forfeiture. Moreover, the voluntariness of the forfeiture must be considered in the context of the plea agreement: Hoffer traded his right to contest the forfeiture for what the government gave him in the bargain, which included dismissing five counts of the indictment.

We turn now to the issue of whether civil forfeiture, contested or uncontested, is a prohibited, encouraged, discouraged or unmentioned factor for departing from the sentencing guidelines.

14

While this issue is a question of first impression in our circuit, a number of other circuits have concluded that civil forfeiture cannot be used by a district court as a basis for departure from the sentencing guidelines.  See United States v. Weinberger, 91 F.3d 642, 644-45 (4th Cir. 1996); United States v. Hendrickson, 22 F.3d 170, 175-76 (7th Cir. 1994); United States v. Crook, 9 F.3d 1422, 1425-26 (9th Cir. 1993); United States v. Shirk, 981 F.2d 1382, 1397 (3d Cir. 1992), vacated on other grounds, 510 U.S. 1068, 114 S. Ct. 873 (1994).  No circuit has held otherwise.

Section 5E1.4 of the sentencing guidelines provides: "Forfeiture is to be imposed upon a convicted defendant as provided by statute."  We agree with the Third, Fourth, Seventh and Ninth Circuits that § 5E1.4 indicates that the Commission viewed forfeiture as a wholly separate sanction, which, if imposed, was intended to be in addition to, not in lieu of, imprisonment.  See Weinberger, 91 F.3d at 644; Hendrickson, 22 F.3d at 175; Crook, 9 F.3d at 1426; Shirk, 981 F.2d at 1397.  This view is supported by the Commission's decision to include forfeiture as a relevant factor when setting fines, see U.S.S.G. § 5E1.4(d)(5), while leaving it out as a factor which may support a reduction in sentence.  See Crook, 9 F.3d at 1426.  The Commission's decision indicates that civil forfeiture is relevant only to the possible monetary sanctions which may flow from a criminal conviction, but it has no bearing on a convicted defendant's term of incarceration.

Moreover, it would make little sense for forfeiture to serve as a basis for departure from the guidelines.  Forfeited assets or

15

property are frequently the proceeds of criminal activities. <u>See</u>, <u>e.g.</u>, 21 U.S.C. § 853(a)(1) (mandating forfeiture of property which constitutes proceeds of certain criminal activities). The more successful a criminal is, the more likely he or she is to accumulate significant assets or property from the criminal activity. Allowing a departure from the sentencing guidelines based on forfeiture would, in essence, reward criminals for their proficiency or success in committing crimes. Surely, the Commission never intended such a result.

Whether a forfeiture is contested or uncontested makes no difference to our holding. In either case, forfeiture lacks the quality of voluntariness which some courts have held may arguably make restitution a potential basis for departure. <u>See</u>, <u>e.g.</u>, <u>United States v. Hairston</u>, 96 F.3d 102, 107-08 (4th Cir. 1996), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 117 S. Ct. 956 (1997) (holding that payment of restitution can, in exceptional circumstances, be basis for departure from sentencing guidelines); <u>Hendrickson</u>, 22 F.3d at 176 (comparing forfeiture to voluntary payment of restitution and concluding that, unlike the payment of restitution, under no circumstances can forfeiture be the basis of a departure from the sentencing guidelines).[4]

For the reasons set forth above, we hold that civil forfeiture can never be the basis for a downward departure from the sentencing

---

[4]This case does not raise the question of whether voluntary payment of restitution can constitute "extraordinary acceptance of responsibility," supporting a departure from the sentencing guidelines, <u>see</u> <u>Hairston</u>, 96 F.3d at 107-08, and we intimate no view on the subject.

16

guidelines; it is a prohibited factor. Therefore, the district court abused its discretion by relying on Hoffer's "voluntary disgorgement" as a basis to depart from the guidelines. See Koon, ___ U.S. at ___, 116 S. Ct. at 2047 ("A district court by definition abuses its discretion when it makes an error of law.").

## C. LOSS OF PRIVILEGE TO PRACTICE MEDICINE

The district court's second basis for departing from the sentencing guidelines was that Hoffer lost the privilege to practice medicine. Hoffer characterizes his loss of medical license as a "voluntary" act on his part, but that is a questionable characterization for two reasons. First, to the extent the matter was subject to his control, Hoffer used it to bargain for something in return from the government. Hoffer no more voluntarily gave up his medical license than the government voluntarily dismissed Counts III through VII of the indictment. Both actions were part of the overall trade reflected in the plea agreement. Second, if Hoffer had not relinquished his license, it likely would have been revoked by the Florida Board of Medicine, anyway. See Fla. Stat. Ann. § 458.331(1)(c) and (q).

Whether characterized as "voluntary" or not, we do not think that Hoffer's loss of medical license is a valid basis for departure. In Koon, the Ninth Circuit held that the district court had erred by granting the defendants a downward departure from the sentencing guidelines on the ground that the defendants' convictions resulted in negative collateral employment consequences. See United States v. Koon, 34 F.3d 1416, 1454 (9th

17

Cir. 1994). The Ninth Circuit expressed concern that collateral employment consequences could be used as a proxy for socio-economic status, a factor the Commission has stated is never a permissible basis for departure. See id. (citing U.S.S.G. § 5H1.10). The Supreme Court rejected that reasoning stating, "[while] a defendant's career may relate to his or her socio-economic status, [] the link is not so close as to justify categorical exclusion of the effect of conviction on a career." ___ U.S. at ___, 116 S. Ct. at 2052. The clear implication of the Supreme Court's statement is that collateral employment consequences could, under some set of circumstances, serve as a basis for a departure from the sentencing guidelines. The Court did not specify what those circumstances were. We will not speculate about all of the possibilities, either. It is enough for present purposes that the Koon Court did not indicate that the loss of an employment or career position could be a basis for departure where that loss was the direct result of the defendant abusing the trust inherent in that very position, an abuse of trust for which the guidelines require an enhancement.

Hoffer received a two-level sentence enhancement under U.S.S.G. § 3B1.3 for using his special skills as a physician to facilitate the commission of his crimes and for abusing the position of trust he held as a physician. Hoffer betrayed society's trust by using his prescription writing privileges to distribute controlled substances outside the legitimate practice of medicine. It was because Hoffer was a physician, and was entrusted

18

as a physician with prescription writing authority, that he was able to commit the crimes for which he was convicted.

The Commission, in § 3B1.3, stated that circumstances such as these warrant a sentence enhancement.  In the background notes to § 3B1.3, the Commission explained that persons who abuse their positions of trust or use their special skills to facilitate or conceal the commission of a crime "generally are viewed as more culpable."  Yet, the district court's treatment of the position of trust Hoffer enjoyed, his medical license and physician status, netted out to a lesser sentence for him.  The court gave Hoffer a four-level downward departure for losing his position of trust, which more than wiped out the two-level enhancement mandated by § 3B1.3 for Hoffer's abuse of that position of trust.

Society, employers, and licensing authorities usually view abuse of a position of trust to commit or facilitate crimes as misconduct warranting loss of that position of trust. As a result, in virtually every case in which a § 3B1.3 enhancement is warranted, there will also be a loss of a position of trust.  The two sanctions or results are inextricably intertwined.  Allowing downward departures for loss of professional or employment position in cases in which that loss flows from an abuse of trust that warrants a § 3B1.3 enhancement would nullify the mandate of § 3B1.3.  The Commission cannot have intended such a result.

During the sentencing hearing, the district court suggested that United States v. Aquilar, 994 F.2d 609 (9th Cir.), opinion withdrawn, 11 F.3d 124 (9th Cir. 1993), supports its decision to

19

depart downward on the basis of Hoffer's loss of the privilege to practice medicine. In Aquilar, the district court granted the defendant, a federal judge, a downward departure from the sentencing guidelines because the defendant would suffer "additional punishment" through the course of potential impeachment and disbarment proceedings. A panel majority affirmed the district court's departure on these grounds, distinguishing the "additional punishment" the defendant suffered from the ordinary collateral consequences resulting from a criminal conviction. Emphasizing that the district court had not departed on the basis of the defendant's "loss of position," id at 645, the majority held that the burden and humiliation the defendant would suffer in the public, quasi-judicial adversarial proceedings that would follow was a permissible basis for the district court to depart from the sentencing guidelines. See id. at 643-45.

There was, however, a "vigorous dissent" by Judge Hall from the holding on this issue. She believed that the district court had erred in departing because, "[t]he kind of humiliation and suffering [the defendant] will suffer, while not common, is not 'atypical.'" Id. at 623. Additionally, Judge Hall found the departure contrary to the intent of the Commission:

> The Guidelines' policy is that "persons who abuse their position of trust . . . generally are viewed as more culpable." U.S.S.G. § 3B1.3 comment. (backg'd). We must assume that the Sentencing Commission has adequately considered the special circumstances of defendants who hold high office, and rejected any notion that such persons should receive more lenient treatment. The district court's departure on the basis of consequences flowing from [the defendant's] breach of the public trust flies in the face of the Guidelines' policy.

20

<u>Id.</u> Consequently, she concluded that the collateral consequences of the defendant's conviction are not a permissible basis for departure. <u>Id.</u>

Hoffer, while recognizing that the original opinion in <u>Aquilar</u> has been withdrawn, nevertheless urges us to adopt the majority's reasoning. Even if the original opinion in <u>Aquilar</u> had not been withdrawn, we do not believe it supports Hoffer's position. In <u>Aquilar</u>, the district court had based its departure on the long, humiliating, and burdensome adversarial proceedings the defendant would face as the result of impeachment and disbarment. It was that "additional punishment" which led the panel majority to affirm the district court. In affirming the district court, it emphasized that the district court had not departed from the guidelines on the basis of the defendant's loss of employment or the foreclosure of career opportunities. <u>See</u> <u>id.</u> at 645.

By contrast, in this case, the district court based its departure on the very grounds the <u>Aquilar</u> Court emphasized were not involved in that case: Hoffer's loss of employment and the foreclosure of career opportunities, i.e., his loss of the privilege to practice medicine. In contrast to the defendant in <u>Aquilar</u>, the process through which Hoffer lost his privilege to practice medicine was not long, burdensome or humiliating. The license forfeiture process Hoffer went through involved nothing more than the signing of a few documents. His experience simply does not compare to the "additional punishment" of protracted adversarial proceedings facing the defendant in <u>Aquilar</u>.

21

Therefore, the reasoning of the <u>Aquilar</u> majority does not support the district court's downward departure.

Moreover, we agree with Judge Hall's dissenting opinion in <u>Aquilar</u>. Because the guidelines contain a section specifically addressing those defendants who abuse the public trust to facilitate the commission of their crimes, the Commission certainly considered the potentially substantial collateral employment consequences this class of defendants face. With those potential consequences in mind, the Commission nonetheless chose to make abuse of a position of trust the basis of a sentence <u>enhancement</u>. Having done so, we believe the Commission indicated that a defendant who receives a § 3B1.3 enhancement for abusing a position of trust cannot then receive a downward departure from the sentencing guidelines for losing that same position of trust. Stated generally, we hold that a factor which is inextricably intertwined with a basis for enhancement under the guidelines will ordinarily be a prohibited basis for downward departure from the guidelines. Accordingly, we hold that, under the circumstances of this case, the district court abused its discretion by granting Hoffer a downward departure based upon loss of his privilege to practice medicine.

## IV. CONCLUSION

For the reasons set forth above, Hoffer's sentence is VACATED and the case is REMANDED for resentencing in accordance with this opinion.