**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-5391

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

2/18/03

THOMAS K. KAHN
CLERK

D. C. Docket No. 95-953-CR-UNGARO-BENAGES

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ROBERT MILLER,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(July 20, 1998)**

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD*, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

_____

*Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.     The government appeals the district court's downward departure

based on defendant Robert Miller's impulse control disorder as constituting reduced

or diminished mental capacity under U.S.S.G. § 5K2.13. Because the facts of this case do not take it outside the heartland of cases, the district court erred in granting a downward departure. Moreover, the district court erred in finding that the defendant's impulse control disorder contributed to the offense conduct. We VACATE the district court's sentence and remand this case for resentencing.

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03

THOMAS K. KAHN
CLERK

## BACKGROUND

The defendant pled guilty to transporting through a commercial computer service materials depicting child pornography in violation of 18 U.S.C. § 2252(a)(1). At the plea colloquy, the government stated that it would have proved at trial that the defendant downloaded and sent images of child pornography between April 15, 1995 and August 31, 1995. The defendant agreed to the facts as outlined at the colloquy hearing. The probation officer who completed the presentence investigation report calculated the offense level at 14, with a criminal history category of 1, resulting in a guideline imprisonment range of 15 to 21 months.

According to the presentence investigation report, the defendant created a profile image on-line that described him as enjoying young boys, young girls, bondage, and group sex. He reported that he had created that profile in order to get all types of images, and that he began receiving pornographic images on a daily basis. He stated that although he was not interested in child pornography, he stored and

2

transmitted some of the child images, but had never originated an image of a child by scanning a photograph and transmitting it. Although there was a dispute at the sentencing hearing over the exact amount of pictures transmitted, the defense agreed that there were "a lot" of pictures.

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03

THOMAS K. KAHN
CLERK

At the sentencing hearing, the defendant argued that jail time made "no sense whatsoever" for him because he had been punished enough by the public humiliation and loss of his livelihood. He moved for a downward departure based on his military background, his educational background, his loss of career opportunities because of the conviction, and his psychological makeup.[1] He also contended that his offense was an aberrant act and that he would be vulnerable in prison due to the nature of his offense.

In support of his grounds for a departure based on his psychological makeup, the defendant presented an expert witness, Dr. Haber, a psychologist, who had examined him and concluded that he suffered from an impulse control disorder

---

[1] Miller graduated from the United States Military Academy at West Point with honors, from Columbia University magna cum laude with a master's degree in international affairs, from the University of Florida magna cum laude with a doctor of philosophy in Inter-American studies, from Biscayne College magna cum laude with a master's degree in sports administration, and from the University of Miami Law School magna cum laude. He served in the armed forces as an intelligence officer in Vietnam, received the Bronze Star among other citations, and was honorably discharged in 1973 having achieved the rank of captain. His intelligence quotient (IQ) was measured at 172.

3

as well as anxiety and depression. Dr. Haber testified that she believed incarceration made no sense for him.

On cross-examination, Dr. Haber testified that she believed that the defendant was not sexually aroused by viewing young children, and that she did not believe that he was interested in child pornography, but used the pictures of children for trading purposes in order to get the kinds of pornography in which he had an interest. Defense counsel acknowledged that the pictures transmitted in a file were readily identifiable by title as to what kind of pornography the file contained, such that anyone would be able to tell that a picture was that of a child. Moreover, Dr. Haber testified that the defendant knew he was transmitting child pornography.[2]

A court-appointed psychiatrist, Dr. Mutter, also examined the defendant and testified at the sentencing hearing. Dr. Mutter agreed that the defendant had an impulse control disorder, as well as a personality disorder and a sexual identity disorder. Dr. Mutter testified, under cross-examination, that it was not unusual for pedophiles and other collectors of child pornography to have a strong impulse control disorder.

**DISCUSSION**

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS K. KAHN
CLERK

---

[2] The defendant also told the probation officer, in a note to the Court, that he knew that he was transmitting pornographic images of children and that it was wrong.

4

We review a district court's departure from the sentencing guidelines for an abuse of discretion.[3] Our review of a departure is a three-step process: (1) we review whether the facts of the case take it outside the heartland of the applicable guideline; (2) we determine whether the departure factor that the district court relied on is a factor that has been proscribed, encouraged, discouraged, or unaddressed by the Sentencing Commission; and (3) we review whether the factor is present to such an extraordinary degree that the departure was warranted.[4]

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03

THOMAS K. KAHN
CLERK

A sentencing court can impose a sentence outside the guidelines range if the court finds an aggravating or mitigating circumstance of a kind or degree that the Sentencing Commission did not adequately consider in formulating the guidelines.[5] The circumstances justifying the departure must significantly differ from the "heartland" of cases covered by a guideline.[6] The sentencing court must determine what, if any factor makes the case atypical, and whether that factor should result in a different sentence.[7]

---

[3] United States v. Hoffer, 129 F.3d 1196, 1201 (11th Cir. 1997).

[4] Id. at 1200.

[5] 18 U.S.C. § 3553(b)(1994); see also U.S.S.G. § 5K2.0 (1997)(policy statement explaining circumstances justifying departure).

[6] United States v. Onofre-Segarra, 126 F.3d 1308, 1310 (11th Cir. 1997), cert. denied, — U.S. —, 118 S.Ct. 1110, 140 L.Ed.2d 163 (1998).

[7] Hoffer, 129 F.3d at 1200.

A district court decides whether a case falls outside the heartland of a particular guideline by assessing the facts of the case and comparing those facts to the facts of other cases which fall within the guideline's heartland.[8]  Departures should only occur in unusual cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime.[9]

The defendant moved for departure on several different bases, but the district court granted the departure on the basis of diminished capacity under U.S.S.G. § 5K2.13.  That guidelines subsection reads:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.[10]

At sentencing, the district court stated  that:

> Let me just tell you right now, based on the testimony of the psychiatrists and based on everything that I have read, I am going to depart downward based on diminished mental capacity.
> I think that the testimony of Dr. Mutter, the court-appointed psychiatrist, and of Dr. Haber, the defense psychologist, was extremely persuasive on the issue of diminished mental capacity.  I think that the sum and substance of their testimony was that Mr. Miller is an

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS K. KAHN
CLERK

---

[8]  Id.

[9]  Onofre-Segarra, 126 F.3d at 1310.

[10]  U.S.S.G. § 5K2.13.

extraordinary case. He is not your typical collector of child pornography or typical purveyor of child pornography; that he has a stress-related impulse disorder which may well have resulted from his Vietnam service or may have been triggered by his Vietnam service, which significantly reduced his mental capacity to resist the impulse or to refrain from trading in child pornography under the circumstances of this case.

. . . .

I really feel that under these circumstances, given his background, given his prospects for recovery, given his exceptional intelligence, given how highly educated he is, and given the fact that he's going to lose his license to practice law, and in all likelihood he is going to lose any ability to teach in any school secondary level on down, I believe that the harshest zone B sentence that would be available would be sufficient to deter any future problem of this sort as to Mr. Miller and also take into account all of the various characteristics that comprise Mr. Miller's personality and what he has to contribute to society. So that's the Court's position.

The facts of the offense conduct do not take it outside of the heartland of cases, despite the district court's finding that the defendant was not a typical collector or purveyor of child pornography. The facts showed that the offense conduct consisted of the defendant trading pornography with others via the Internet, with the defendant's full knowledge that the pictures were of children. Whether he received personal enjoyment from the pictures of children that he traded is irrelevant; harm is done in sustaining a market for such pictures.[11] The offense conduct is exactly the sort

---

[11] See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 67, 93 S.Ct. 2628, 2641, 37 L.Ed.2d 446 (1973)("[A] person's inclinations and "fantasies ... are his own and beyond the reach of government...."); see also New York v. Ferber, 458 U.S. 747, 756-762, 102 S.Ct. 3348, 3354-357, 73 L.Ed.2d 1113 (1982)(states entitled to greater leeway in regulating child pornography because of, inter alia, harm to children used in materials produced, and regulating the economic market for child pornography is lawful to decrease the motive for producing it).

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS K. KAHN
CLERK

of conduct that 18 U.S.C. § 2252(a)(1) was intended to regulate.[12] Congress amended

18 U.S.C. § 2252 in 1984 to include those who receive and distribute child

pornography even though they lack a commercial motive, because the harm to the

child exists regardless of the viewer's motivation, and "the industry would disintegrate

absent willing buyers, who play a necessary role in any distribution network."[13]

Because the circumstances surrounding the commission of the crime were not unusual,

the facts of the case did not provide grounds for departure.

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03

THOMAS K. KAHN
CLERK

Thus, a departure was justified only if the defendant had a characteristic

which took him out of the heartland of cases. Certainly the defendant's superior

education, military performance, and intelligence are exceptional. But these are not

characteristics upon which a departure can be based.[14] Nor would poor impulse

control be unusual, regardless of whether it stemmed from an impulse control

disorder. Dr. Mutter testified that it was not unusual for those who collect child

pornography, whether they were pedophiles or not, to have impulse control disorders.

---

[12] See United States v. Miller, 776 F.2d 978, 979 (11th Cir. 1985), cert. denied, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986).

[13] Id.

[14] See U.S.S.G. § 5H1.2 (education and vocational skills not relevant in determining whether a sentence should be outside the applicable guideline range); § 5H1.5 (employment record not relevant); § 5H1.11 (military, civic, charitable, public service, employment-related contributions not relevant).

Many offenders commit crimes because they have poor impulse control.[15] An impulse control disorder is not so atypical or unusual that it separates this defendant from other defendants. Because there was nothing unusual about the defendant or the facts of this case, it falls within the heartland of cases regulated by the sentencing guideline.

Moreover, § 5K2.13 requires that the diminished capacity be linked to the commission of the offense. Dr. Haber testified that the defendant's "disorder consisted of stress-related sexual acting out with consenting adults or by viewing certain pictures or actions . . . ." She stated emphatically several times that the defendant was not a pedophile, made several statements that "he used the pornographic pictures of children to get the kind of pictures that he wanted, which were a totally different kind of pictures; that it was a manipulative device on his part to get what he preferred, which was a different type of pornography." She later stated on cross-examination that "I do not believe that this man has an interest in child pornography at all." Dr. Mutter agreed that the defendant was not a pedophile, and

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS K. KAHN
CLERK

---

[15] See Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)(noting that "[p]risons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.")

testified that the defendant's sexual identity disorder "deal[t] with male homosexuality."

Thus, it appears that, at most, the defendant's impulse disorder was related to his viewing of adult pornography and acting out sexually with adults, and that his offense conduct was no more related to the impulse disorder than if he had robbed someone in order to use the proceeds to purchase adult pornography. The impulse was related to viewing pornography, but was not related to the means of obtaining the pornography. A departure under § 5K2.13 requires that the reduced mental capacity contribute to the offense.[16] The experts' testimony merely showed that the impulse control disorder explained his interest in adult pornography, but it failed to establish that the disorder caused him to trade child pornography, which is the offense for which he was being sentenced. Because the facts did not sufficiently link the disorder to the offense, no § 5K2.13 departure was appropriate.

The district court held that an impulse control disorder qualified as diminished capacity under U.S.S.G. § 5K2.13. Because this case was not outside the heartland of cases, the first step in our review, we need not reach the issue of whether an impulse control disorder alone, not caused by a disorder affecting the ability to

---

[16] See United States v. Holden, 61 F.3d 858 (11th Cir.1995)(district court must find that the defendant's diminished capacity contributed to his offense).

10

reason or process information, constitutes diminished capacity. The defendant's sentence is VACATED and the case is remanded for resentencing in accordance with this opinion.

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/18/03
THOMAS K. KAHN
CLERK

11