PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/25/99
THOMAS  K. KAHN
CLERK

No. 96-5464

D.C. Docket No. 96-CR-192-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

SHAWN PICKERING,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(June 25, 1999)**

Before TJOFLAT, BARKETT and MARCUS, Circuit Judges.

TJOFLAT, Circuit Judge:

The Government appeals the district court's decision to depart downward from the applicable sentence range under the Sentencing Guidelines by sentencing the defendant to zero months imprisonment for three counts of armed bank robbery. Because we find that this departure was an abuse of discretion, we vacate the defendant's sentences for those offenses and remand this case to the district court for further proceedings consistent with this opinion.

I.

The defendant, Shawn Pickering, committed four armed bank robberies between August 30 and November 22, 1994. On May 1, 1995, Pickering pled guilty to certain charges brought by the State of Florida regarding the fourth (November 22) robbery; he was then incarcerated in the state prison system. A federal grand jury subsequently indicted Pickering for the first three robberies on March 5, 1996. The indictment charged Pickering with three counts of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d) (1994), and three counts of using a firearm during the robberies in violation of 18 U.S.C. § 924(c) (1994). Pickering initially pled not guilty.

Between July 3 and August 12, 1996, the day before Pickering's trial was to commence, the Government made several plea offers to Pickering. The

Government's best offer was transmitted to Pickering's lawyer on the morning of Friday, August 9, and was due to expire at 5:00 p.m. that day. This offer would have allowed Pickering to plead guilty to two of the section 924(c) firearm counts in exchange for dismissal of the remaining four counts. According to Pickering's lawyer, because of the limited duration of the offer and a delay in being able to visit with Pickering at the federal detention center, Pickering had only forty-five minutes to consider the offer and discuss it with his lawyer before it expired. Pickering did not respond to the offer within the allotted time. On August 12, with his trial set to begin on the following day, the Government offered Pickering another plea agreement. Pickering accepted this offer and pled guilty to the three armed bank robbery counts and two of the section 924(c) firearm counts; the remaining section 924(c) count was dismissed.

At a sentencing proceeding held on October 31, 1996, the district court imposed the mandatory sentences of five years imprisonment for the first firearm count and twenty years imprisonment – to run consecutive to the five-year sentence – for the second firearm count. See 18 U.S.C. § 924(c)(1). As to the three armed bank robbery counts, the presentence investigation report assigned Pickering a criminal offense level of 29 and a criminal history category of II. The district court

reduced the offense level to 26 based on Pickering's acceptance of responsibility,[1] see United States Sentencing Commission, Guidelines Manual, § 3E1.1 (Nov. 1, 1995), yielding an applicable sentence range of 70-87 months imprisonment. See U.S.S.G. Ch. 5, Pt. A. The court then addressed Pickering's motion for a downward departure from this range under U.S.S.G. § 5K2.0.

In his motion, Pickering presented three possible grounds for a departure: (1) the bank robberies could be viewed as "aberrant behavior" given that he had no criminal record prior to August 1994; (2) the robberies were attributable, at least in part, to diminished capacity caused by his heavy use of narcotics; and (3) the robberies were a result of certain personal circumstances – including abuse by his stepfather, rejection by his stepmother, and the recent removal of his girlfriend to another state by her parents – that caused him to become emotionally dependent on outside sources.[2] While acknowledging that none of the grounds warranted a

---

[1] The presentence investigation report allowed no reduction in Pickering's offense level for acceptance of responsibility. Pickering's attorney objected to the report on this ground. At the sentencing proceeding, Pickering's lawyer reminded the district court that Pickering had given the police an oral confession regarding his participation in the robberies. Pickering also made an oral statement to the court accepting responsibility for his actions. Over the Government's objection, the court then granted Pickering a three-level reduction for acceptance of responsibility. The Government does not appeal this reduction.

[2] During the sentencing hearing, Pickering testified that he robbed the banks to obtain money so that he could visit his girlfriend in Chicago and try to salvage their relationship. The district court found this testimony credible: "Mr. Pickering, this is a strange factual scenario and a very odd reason for committing bank robberies, but for whatever reason I think you did it for the reasons stated."

departure when considered individually, Pickering argued that a departure was appropriate when the grounds were considered collectively. The district court responded to Pickering's motion with the following remarks:

> I find this is a case outside of the heartland, and the Court will depart downward. The Court is aware, as the parties have argued, that individually the three bases would not be grounds for a downward departure, that is, the aberrant behavior of the defendant, the use of drugs and the personal circumstances referred to by the defense.
>
> There is a fourth basis which, perhaps, would be a basis in and of itself, I'm not sure, but it seems to me the defendant, offered a particular plea by the Government which expired at 5:00 p.m. on a given day is very odd when defense counsel states he had difficulty reaching his defendant. He only had a few moments to discuss the decision based on the prison entry conditions, et cetera, and that just a few days later the offer is withdrawn and the defendant did not have the opportunity to enter the plea. It seems to me in terms of Guidelines and being fair that this provides an additional basis for departure, individually and collectively, with all of the other reasons cited by the defendant.
>
> Moreover, the Court finds another basis. The defendant has provided great assistance while being incarcerated. He has aided over 70 individuals in receiving their GED, and listening to the defendant speak, he's very articulate and seems like a very bright young man, and I find that he did, in fact, aid those individuals, and he continues to participate in the prison system by conducting religious group sessions. That is another basis. His extraordinary service while incarcerated is a basis for a downward departure.
>
> In conjunction with all of these items, pursuant to [U.S.S.G. §] 5K2.0, the Court is going to depart downward by imposing a sentence as to [the bank robbery counts] concurrent with the sentence as to [the firearm counts].

5

Upon being informed that the bank robbery sentences could not run concurrently with the firearm sentences, see 18 U.S.C. § 924(c)(1),[3] the court replied: "Then I have another response for that: Alternatively, I will depart downward as to [the bank robbery counts] . . . to zero years consecutive to the five years as to [the first firearm count]."

The Government objected to this downward departure, and now appeals. We have jurisdiction pursuant to 18 U.S.C. § 3742(b) (1994) and 28 U.S.C. § 1291 (1994).

## II.

Under 18 U.S.C. § 3553(b) (1994), a sentencing court may impose a sentence that departs from the applicable guideline range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Accord U.S.S.G. § 5K2.0, p.s. We review the district court's decision to depart

---

[3] When a person is convicted of violating section 924(c), the term of imprisonment imposed for that violation may not "run concurrently with any other term of imprisonment including that imposed for the crime of violence . . . in which the firearm was used or carried." 18 U.S.C. § 924(c)(1).

downward for abuse of discretion. See Koon v. United States, 518 U.S. 81, 98-100, 116 S. Ct. 2035, 2046-47, 135 L. Ed. 2d 392 (1996).

As an initial matter, we agree with the district court's conclusion that none of the three grounds mentioned by Pickering provides a basis for a downward departure when considered individually. In this circuit, a sentencing court has the discretion to depart downward on the basis of aberrant behavior only if it makes "a careful factual determination that the defendant's conduct constituted a single, aberrant act." United States v. Bush, 126 F.3d 1298, 1301 (11th Cir. 1997) (quoting United States v. Withrow, 85 F.3d 527, 531 (11th Cir. 1996)).[4] "[S]uch an act is not established unless the defendant is a first-time offender and the crime was a spontaneous and thoughtless act rather than one which was the result of substantial planning." Id. Pickering's armed robberies of four banks in four months clearly do not constitute a single spontaneous and thoughtless act. As to Pickering's claim that diminished capacity due to his use of narcotics contributed to the violent bank robberies, Pickering concedes on appeal that this cannot be a

---

[4] Pickering argues on appeal that, in light of Koon, a sentencing court also has discretion to depart downward on the basis of multiple acts that constitute "aberrant behavior in general." United States v. Kalb, 105 F.3d 426, 429 (8th Cir. 1997) (internal quotation marks omitted). Because this argument was not presented to the district court, we do not consider it here. See United States v. Prichett, 898 F.2d 130, 131 (11th Cir. 1990) ("Normally, we will not consider an argument raised for the first time on appeal. This rule is also applicable to sentencing proceedings." (citation omitted)).

7

basis for departure.  See U.S.S.G. § 5K2.13, p.s.; United States v. Russell, 917 F.2d

512, 517 (11th Cir. 1990).

With regard to the personal circumstances cited by Pickering, the

Government argues that U.S.S.G. § 5H1.12, p.s., prohibited the district court from

departing on that basis because such circumstances merely indicated a

disadvantaged upbringing.  Pickering responds by characterizing his circumstances as

a mental or emotional condition that provided the district court with a "discouraged" basis for

departure[5] under U.S.S.G. § 5H1.3, p.s.  The availability of a departure pursuant to section 5H1.3

under these circumstances is highly questionable.[6]  Because Pickering did not present this

characterization to the district court, however, we need not delineate the precise

contours of section 5H1.3 here.  See supra note 4.

_____

[5] In note 7, infra, we discuss the place of "discouraged" bases of departure within the framework of Koon.

[6] Our pre-Koon cases clearly would not permit a downward departure for Pickering under section 5H1.3 given the violent nature of his crime.  See United States v. Braxton, 19 F.3d 1385, 1386 (11th Cir. 1994) (rejecting past abuse as ground for departure under sections 5H1.3 and 5K2.13 because defendant had committed violent crime of armed robbery); Russell, 917 F.2d at 516-17 (reading sections 5H1.3 and 5K2.13 together, and concluding that "ordinarily mental and emotional conditions are irrelevant to mitigate defendants' culpability, but that in extraordinary instances the conditions may be relevant – but then only if the defendant committed a non-violent crime"); id. at 517 (characterizing armed bank robbery as a violent crime).  Although cases from other circuits have analyzed section 5H1.3 somewhat differently in light of Koon (a difference upon which we express no view here), a downward departure would likewise be unavailable to Pickering under these alternative analyses.  See, e.g., United States v. Pullen, 89 F.3d 368, 370-72 (7th Cir. 1996) (holding that bank robber who presented psychological evaluation concluding that his history of childhood physical and sexual abuse by father was linked to his criminal activity had not met burden of showing that history of abuse made him an "extraordinary robber exceptionally deserving of lenient treatment").

Thus, we conclude that the district court did not err in finding that none of these three individual grounds provided a basis for departure. The district court did, however, rely upon these three grounds collectively – in conjunction with two additional grounds, which we address below – to support its decision to depart downward. In so doing, the court abused its discretion. We recognize that the Sentencing Commission has

> not foreclose[d] the possibility of an extraordinary case that, because of a combination of . . . characteristics or circumstances [that are not ordinarily relevant to a departure from the applicable guideline range], differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0, p.s., comment. In this case, the district court made no findings and provided no reasoning to support the conclusion that Pickering presented the type of extremely rare case contemplated by the Commission. For instance, the court did not bother to analyze the three relied-upon grounds under the quadripartite Koon typology[7] in order to determine whether they were

---

[7] See Koon, 518 U.S. at 95-96, 116 S. Ct. at 2045. We provided a useful summary of this typology in United States v. Hoffer, 129 F.3d 1196 (11th Cir. 1997). The Hoffer panel stated:
> To determine whether a factor which takes a case outside the heartland should result in a different sentence, a district court must first decide whether the factor is forbidden, encouraged, discouraged, or unaddressed by the guidelines as a potential basis for departure. If a factor is forbidden, a district court cannot use it to depart from the applicable guideline . . . . If a factor is encouraged, a court is

9

"discouraged" factors – i.e., circumstances "not ordinarily relevant" to a departure – that might be combined to support a departure, rather than "forbidden" factors that could not be so combined. In addition, the court failed to undertake a refined assessment of the facts of Pickering's case in order to demonstrate that it fell outside of the heartland in a way important to the statutory purposes of sentencing, and failed to distinguish his case from a typical case in which the three relied-upon grounds were present. See United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997) ("A district court determines whether a case falls outside the heartland by making a refined assessment of the facts of the case, comparing those facts to the facts of other cases falling within the guideline's heartland."); id. ("If a factor is discouraged, . . . a district court may depart only if the factor is present to an exceptional degree or in some other way makes the case distinguishable from an

---

authorized to depart from the applicable guideline if the guideline does not already take that factor into account. If a factor is discouraged, or is an encouraged factor already taken into account by the applicable guideline, a district court may depart only if the factor is present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present.

Finally, a district court may depart on the basis of a factor not addressed by the Sentencing Commission if it finds, after considering the structure and theory of both the relevant individual guidelines and the Guidelines taken as a whole, that the factor takes the case out of the applicable guideline's heartland. However, a district court departing on the basis of an unenumerated factor should bear in mind the Commission's expectation that such departures will be highly infrequent.

Id. at 1200-01 (internal quotation marks and citations omitted).

ordinary case where the factor is present."). Instead, the court simply announced that it would depart downward under section 5K2.0 "[i]n connection with" these three grounds. Because the court made this arbitrary announcement in lieu of exercising its discretion, we hold that it abused its discretion by relying on these three grounds collectively as a basis for its downward departure. See James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993) (noting that a court may abuse its discretion by "a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion").

Turning to the fourth basis of departure relied upon by the district court, the Government argues as a matter of law that the court's dissatisfaction with the timing of the prosecutor's most lenient plea offer to Pickering was an impermissible basis for departing downward. We agree. If a prosecutor wishes to offer a defendant an "exploding" plea bargain with a short fuse, as the prosecutor did here, this decision is entirely within his or her prosecutorial discretion and does not constitute – either alone or in combination with other factors – a valid ground for departure. See United States v. Contreras, 108 F.3d 1255, 1272 (10th Cir. 1997) ("[E]ntering into plea bargains is within the United States Attorney's prosecutorial discretion. '[S]ubstituting the judge's view of the proper general

11

prosecutorial policy for that of the prosecutor [does not constitute] a valid ground for departure from the guideline range.'" (alterations in original) (quoting United States v. Stanley, 928 F.2d 575, 583 (2d Cir. 1991))). Moreover, it is important to remember that a sentencing court is absolutely prohibited from modifying a plea agreement presented to it by the parties. See United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999). We cannot allow the district court to evade this prohibition by using the Sentencing Guidelines to give Pickering the benefit of a more lenient plea offer that he did not accept. We conclude, therefore, that it was an abuse of discretion for the district court to rely on the timing of the Government's most lenient plea offer as a basis for its departure. See Koon, 518 U.S. at 100, 116 S. Ct. at 2047 ("A district court by definition abuses its discretion when it makes an error of law.").

Finally, we consider the sole remaining basis for the district court's downward departure: Pickering's post-offense rehabilitation. Although a sentencing court already takes into account "post-offense rehabilitative efforts (e.g., counseling or drug treatment)" in deciding whether to reduce a defendant's offense level due to acceptance of responsibility, see U.S.S.G. § 3E1.1, comment. (n.1(g)), we have held that "a truly extraordinary post-arrest, pre-sentence [rehabilitation] may exceed the degree of [rehabilitation] contemplated in section

12

3E1.1 and therefore justify a downward departure."[8]  United States v. Williams,

948 F.2d 706, 710-11 (11th Cir. 1991) (discussing post-arrest recovery from drug

addiction); see also Koon, 518 U.S. at 96, 116 S. Ct. at 2045 (stating that if a factor

is "an encouraged factor already taken into account by the applicable Guideline,

the court should depart only if the factor is present to an exceptional degree or in

some other way makes the case different from the ordinary case where the factor is

present").  In this case, the district court departed downward to a sentence of zero

months for the armed bank robbery counts based on its finding that Pickering's

GED tutoring and his organization of religious group sessions constituted

"extraordinary service while incarcerated."

We find that the manner in which the district court departed downward

constituted an abuse of discretion.  In order to understand why, it is necessary to

revisit the basic organizing principles of the Sentencing Guidelines.  See generally

United States v. Mogel, 956 F.2d 1555, 1558-61 (11th Cir. 1992).  Every sentence

under the Guidelines is determined by combining an offense- and an offender-

---

[8] Other circuits have reached the same conclusion regarding the role of post-offense
rehabilitation in sentencing.  See United States v. Jones, 158 F.3d 492, 503 (10th Cir. 1998);
United States v. Rhodes, 145 F.3d 1375, 1383 (D.C. Cir. 1998); United States v. Sally, 116 F.3d
76, 80-82 (3d Cir. 1997); United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997) (holding that
"post-offense rehabilitation may provide an appropriate ground for departure only when present
to such an exceptional degree that the situation cannot be considered typical of those
circumstances in which an acceptance of responsibility adjustment is granted").

13

based component.  A table developed by the Sentencing Commission indicates an appropriate sentence range for possible combinations of these components, with the offender's criminal history forming the horizontal axis and the appropriate offense level forming the vertical axis.  See U.S.S.G. Ch. 5, Pt. A.  In 28 U.S.C. § 994 (1994), Congress "correlate[d] the penological goals of retribution and general deterrence with the offense-based, or vertical, component of a sentence, and the goals of incapacitation and rehabilitation with the offender-based, or horizontal, component."  Mogel, 956 F.2d at 1559.

Informed by this general organizational structure, we have previously observed that a defendant's actions that demonstrate acceptance of responsibility after the offense has been committed – such as post-offense rehabilitation – "bear only a tangential, if any, relation to [the offender's] just deserts.  Such actions instead reflect more strongly on the offender's rehabilitative potential and likelihood of recidivism."  Id. at 1560.  Given that the goals of incapacitation and rehabilitation are associated with the horizontal axis of the sentencing table, any downward departure for post-offense rehabilitation must occur along that axis.[9]

_____

[9] Section 4A1.3 of the Guidelines supports our conclusion.  This section provides that "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range."  U.S.S.G. § 4A1.3, p.s. (emphasis added).  This departure may be downward if "the court concludes that a defendant's criminal history category significantly over-

14

In this case, therefore, the district court was permitted to depart downward on the basis of Pickering's post-offense rehabilitation – assuming <u>arguendo</u> that such a departure was warranted – only by reducing his criminal history category from II to I. When combined with an offense level of 26, this departure would have yielded a minimum sentence of 63 months imprisonment. <u>See</u> U.S.S.G. Ch. 5, Pt. A. Instead, the district court ignored this limitation on its authority and departed downward along the offense level (vertical) axis of the sentencing table in order to give Pickering a sentence of zero months imprisonment. This vertical downward departure was a clear abuse of discretion.

## III.

For the foregoing reasons, we vacate Pickering's sentences for the three armed bank robbery offenses and remand this case to the district court for further proceedings consistent herewith.

VACATED and REMANDED.

---

represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." <u>Id</u>. In making such a downward departure, "the Commission intends that the court use, as a reference, the guideline range for a defendant with a . . . lower criminal history category." <u>Id</u>. By definition, therefore, the extent to which a sentencing court may depart downward under section 4A1.3 is limited. "The lower limit of the [guideline] range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below [this lower limit] on the basis of the adequacy of criminal history <u>cannot be appropriate</u>." <u>Id</u>. (emphasis added); <u>accord</u> <u>Russell</u>, 917 F.2d at 517-18.

15