[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------

Nos. 99-12265 and 99-12672

-------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 11, 2001
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 92-08053-CR-JCP
and 91-06081-CR-JCP


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO PABLO MESA,
a.k.a. Tito,
a.k.a. Pablo Mesa,

Defendant-Appellant.


-------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
-------------------------------------------------------------------

**(April 11, 2001)**


Before EDMONDSON and MARCUS, Circuit Judges, and RESTANI*, Judge.

_____

*      Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

EDMONDSON, Circuit Judge.

This appeal is about re-sentencings following remand from the appellate court.

In addition to reviewing the district court's determination that Defendant-Appellant was an organizer/leader in the offense conduct under § 3B1.1(a) of the Federal Sentencing Guidelines, this case presents two other questions. First, must the district court consider an issue at re-sentencing on remand that is not within the scope of the mandate and which Defendant failed to raise in his prior sentencing and appeal therefrom? Second, is a defendant eligible at re-sentencing for a downward adjustment to his offense level under the Sentencing Guidelines, for his rehabilitation and good behavior while incarcerated?

We conclude that the district court did not err in finding Defendant held an organizer/leader role in the offense. We also answer both of the other questions "No." So we affirm Defendant's sentence.

In 1992, Appellant-Defendant, Pedro Pablo Mesa ("Defendant") pled guilty to violations of 21 U.S.C. §§ 846 and 841(a)(1) in the United States District Court for the Southern District of Florida. He received a four-level upward adjustment in his offense category under § 3B1.1(a) of the Federal Sentencing Guidelines for his managerial role in the drug trafficking conspiracy. He also received a two-level

downward adjustment for acceptance of responsibility.  The result was a total offense level of 36 and a sentence of 188 months.

Before his sentencing, a Pre-Sentence Investigative Report ("PSI") was prepared, concluding that Defendant was the organizer/leader of the offense charged in this case.  Based on the PSI, the district court determined that Defendant was an organizer/leader under the Guidelines.  Defendant's attorney failed to file a timely appeal of the sentence.

Defendant, pursuant to 28 U.S.C. § 2255, filed a Motion to Vacate, Set Aside or Correct Judgment and Sentence.  The district court adopted the magistrate's Report and Recommendation and granted Defendant's motion on the basis of  "ineffective assistance of counsel," because Defendant's attorney did not file a timely notice of appeal.  The sentence was vacated to allow the district court to re-sentence Defendant so he could file a timely notice of appeal.

In April 1997, Defendant appeared before the district court for his first re-sentencing (the "1997 Sentencing").  At issue at the hearing was whether Defendant was an organizer/leader in the offenses charged.  After hearing testimony by a government witness and considering the amended PSI, the court imposed the same sentence as at the 1992 Sentencing.  Despite requests from the government and Defendant, the court made no specific findings of fact on

3

Defendant's role in the offense. Defendant objected to the court's ultimate findings that Defendant was an organizer/leader.

On appeal, we vacated the organizer/leader enhancement and remanded to the district court to make more detailed, specific findings of fact on the question of whether Defendant was an organizer/leader in the offense. We concluded that the record amply supported a buyer/seller relationship between Defendant and Ricky Hill ("Hill")– the government witness – but that the record was "exceedingly sparse with respect to any control, influence, or leadership exercised by Mesa over Hill or Hill's associates." United States v. Mesa, No. 98-4513, slip op. at 4 (11th Cir. Feb. 25, 1999) ("Mesa I"). We "VACATE[D] the sentence enhancement and REMAND[ED] for further factual findings."[1] Id. at 5.

In the light of our mandate, Defendant , on 25 June 1999, was re-sentenced again. (the "1999 Sentencing"). In addition to arguing that Defendant was no organizer/leader under the guidelines, defense counsel also requested the district court to award a one-level downward adjustment pursuant to §3E1.1(b)(2) for "timely notifying authorities of his intention to enter a plea of guilty..." See generally Federal Sentencing Guidelines Manual §3E1.1(b)(2). Furthermore,

---

[1] In remanding the case we noted that the government argued that Defendant could have been an organizer/leader for purposes of the guidelines due to his control over others who worked directly for him, but that the district court had given no indication that it relied on this evidence to conclude that Defendant was an organizer/leader in the offenses charged. Mesa 1 at 5.

defense counsel requested the district court to grant a downward adjustment for Defendant's good conduct during more than eight years of incarceration. The district court denied both requests.

The district judge made a series of specific findings of fact from which he determined that Defendant was a leader/organizer under §3B1.1(a) of the Sentencing Guidelines. Defendant objected and filed a timely notice of appeal. It is this appeal which is now under review. In this appeal, he advances these contentions: 1) the district court ignored the law of the case in finding that Defendant organized or led Hill and other members of Hill's organization; 2) even if the district court had the authority to find Defendant was an organizer/leader in the offense, his findings of fact to support this conclusion were clearly erroneous; 3) the district court improperly failed to award Defendant an additional -level reduction in his sentencing under § 3E1.1(b)(2); and 4) the district court erred in denying a one-level downward departure for post-sentence rehabilitation: the district court said the government did not have proper notice that the defense would request this adjustment.

Leadership Role

Section 3B1.1(a) says that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," his offense level should be increased by four levels. U.S.S.G. § 3B1.1(a). We have determined that section 3B1.1(a) requires both a leadership role and an extensive operation. See United States v. Yates, 990 F.2d 1179, 1181-82 (11th Cir. 1993). We review the district court's determination of a convicted defendant's role in the offense as a question of fact subject to a clearly erroneous standard of review. But, the application of the Guidelines to the facts is a question of law that we review *de novo*. See id. at 1182.

Defendant argues that the district court's findings of fact are not supported by record evidence and are, therefore, clearly erroneous.[2] The district court found the following facts based on the Revised PSI as well as evidence presented at the plea hearing and each of the two resentencings; 1) When Defendant fell behind on paying Hill's marijuana supplier, James Wooten ("Wooten"), Hill brought Wooten

---

[2]Defendant's first argument – that our remand to the district court established law of the case that only a buyer/seller relationship existed between Defendant and Hill – is without merit. Although we did say that "[t]he record amply supports a buyer/seller relationship," we did not preclude the district court from determining, upon further consideration, that Defendant was, in fact, in a leadership role. Although we wrote that the evidence in the record was exceedingly sparse for Defendant's control over Hill or Hill's associates, we did not make a decision on a question of law and did not establish the law of the case to be that only a buyer/seller relationship could exist between the two.

6

directly to Defendant to explain the lack of payment; 2) Defendant was an "officer" and leader of a young woman who stayed in Defendant's rented house in Kendall and retrieved cocaine for Defendant to show to Hill; 3) Defendant organized and led at least one other person to unload marijuana from Hill's vehicles and re-load them with cocaine; 4) Defendant organized and led a husband and wife who delivered cocaine to Hill in Tennessee; 5) Defendant organized at least one person to act as an interpreter during drug deals, and 6) Defendant organized and led Hill and Wooten in that he exercised decision making authority over them, he claimed, as the source of the cocaine, a greater share of the profits, he conducted his drug distribution business with them for more than four years throughout three states and directed others working with Hill on how marijuana deliveries and cocaine pickups were to be completed. The district court determined that, along with other facts, this record established, by a preponderance of the evidence, that Defendant was one of at least two organizers and leaders of the offenses charged.

The district court's findings of fact are not clearly erroneous. Evidence presented in both the PSI and in testimony by Hill supports a finding that Defendant controlled and directed the acts of several people involved in the drug conspiracy. The district court based its conclusion that Defendant was an

7

organizer/leader on two theories: the court found (1) that Defendant occupied a leadership role in Hill's organization and (2) that Defendant controlled several other people in Florida who were part of the trafficking conspiracy taking drugs to Georgia. If Defendant occupied a leadership role over either one of the two sets of people, he was correctly subject to the four-level upward adjustment.

When we last saw this case, we said that the record evidence indicating that Defendant was an organizer/leader over Hill and his organization was "sparse." Mesa I at 5. After we remanded the case for further findings of fact, no additional evidence was presented to the district court. The district court, however, did make specific findings of fact about Defendant's role in Hill's organization. Upon review of the same evidence that we earlier characterized as "sparse," we are unsure that the district court did not clearly err in finding Defendant had a controlling position in Hill's organization.

We need not decide that issue, however, because we conclude that the district court properly determined that Defendant controlled a sufficient number of other people to qualify as an organizer/leader in the offense. The district court found that Defendant was the organizer and leader of a young woman who stayed at his house and retrieved cocaine for him, of a husband and wife team who delivered cocaine to Hill, of at least one interpreter who would aid in drug

8

transactions, and of at least one person who would load and unload Hill's vehicle of drugs during transactions.  Each of these findings is supported by evidence presented at the sentencing hearing. So we cannot conclude that the district court clearly erred.

Defendant makes two arguments about the sentencing adjustment.  First, he attacks Hill's testimony as unreliable and insufficiently precise; and he says, therefore, that the testimony is, under the circumstances,[3] "highly suspect."  This argument attacks the credibility of the evidence presented. But the district court, seemingly, found the evidence credible.  See United States v. Parrado, 911 F.2d 1567, 1571 (11th Cir. 1990) (stating that the determinations of witness credibility are made exclusively by the finder of fact.)  We therefore determine Defendant's argument to be without merit.

Defendant next argues that his activities and relationships described to the district judge did not, as a matter of law, rise to an organizer/leader role.  He relies heavily on United States v. Alred, 144 F.3d 1405 (11th Cir. 1998), to establish that he was not an organizer/leader in this offense.  In Alred, we said that evidence of

---

[3]Hill was testifying as a cooperating witness and hoped for more lenient treatment based on his cooperation.

the defendant's extensive buyer/seller and fronting[4] relationships was insufficient to support an enhancement as an organizer/leader. We noted that evidence of fronting, without more, was insufficient to satisfy the management requirement and that negotiating deliveries is merely incidental to a buyer/seller relationship. Id. at 1422. There was also evidence in Alred that the defendant was caught traveling with another person while in possession of a large sum of cash, and that he worked with another person to unload marijuana from a truck. Id. at 1421. In short, no evidence existed of "authority in the organization that perpetrates the criminal conduct, the exertion of control, or leadership." Id. at 1422.

In contrast, evidence in this case was presented that defendant directed the activities of several people, including at least three people who stored and delivered cocaine for him, other people who unloaded and prepacked vehicles, and at least one interpreter who translated during drug transactions. The cumulative effect of directing these activities in furtherance of the offense is sufficient for a sentencing court to find that the Defendant acted as an organizer/leader for the purposes of U.S.S.G. § 3B1.1(a)

---

[4]Fronting is when a dealer gives other drugs on credit and is reimbursed once they sell the drugs to others.

<u>One-Level Adjustment for Timely Plea</u>

Defendant argues that, at the 1999 Re-sentencing, the district court should have applied a one-level downward adjustment to his sentencing level pursuant to U.S.S.G § 3E1.1(b)(1) (allowing adjustment for a timely plea). The district court declined to order the adjustment; the judge said the PSI prepared for the 1999 Re-sentencing recommended only the two-level reduction for acceptance of responsibility.

At one time, Defendant might have been eligible for the one-level adjustment under Section 3E1.1(b)(1). But we conclude that the district court committed no reversible error given the surrounding circumstances: 1) the argument for the adjustment was unrelated to the reason for our remand; 2) it was brought to the district court's attention for the first time at the 1999 Re-sentencing; 3) it could have been, but was not, introduced to the district court at the 1997 Re-sentencing;[5] 4) it could have been raised in <u>Mesa I</u>, although it would have been subject to a plain error standard of review in <u>Mesa I</u>.

If the appeals court issues a specific mandate, the district court must obey:

---

[5]At oral argument Defendant argued that an objection was not made at the 1997 Re-sentencing because the judge had limited the scope of the re-sentencing. Defendant did, however, file a six-page objection to the PSI for the 1997 Re-sentencing; and he did not object to the PSI's failure to include the one-level reduction now requested.

the mandate is not subject to interpretation. See Litman v. Massachussets Mutual Life Ins. Co., 825 F.2d 1506, 1511 (11th Cir. 1987) (en banc). In Litman we pointed out that "[p]ost mandate maneuvering in the district courts would undermine the authority of appellate courts and create a greate deal of uncertainty in the judicial process... [and] eliminate any hope of finality." Id. at 1511-12. The district court must implement both the letter and spirit of the mandate, taking into consideration our opinion and the circumstances it embraces. See Pelletier v. Zweifel, 987 F.2d 716, 718 (11th Cir. 1993) (citing Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir. 1985)).

In this case, we remanded saying, "we VACATE the sentence enhancement and REMAND for further factual findings." Mesa I, at 5 (emphasis added). Also, the order of our court, issued as the mandate, said, "it is now ordered and adjudged by this Court that the sentence enhancements imposed by the said District Court in these causes be and the same are hereby VACATED and that these matters be REMANDED to the said District Court for further proceedings in accordance with the opinion of this Court." United States v. Mesa, Docket # 98-4513, Judgment Feb. 25, 1999 (issued as Mandate Mar. 31, 1999). Our mandate to the district court did not vacate Defendant's sentence in its entirety and was not related to the argument Defendant later raised with the district court for a one-level reduction for

12

a timely plea.

Under these circumstances, the district court was not required to consider an argument which Defendant should have introduced at the 1997 Re-sentencing and, moreover, should have raised in his first appeal in <u>Mesa I</u>.  Requiring the district court to consider the argument at the second re-sentencing following our remand would give defendants incentive to introduce sentencing objections in a piecemeal fashion and would allow them (by their waiting to advance the argument anew at re-sentencing) to avoid the difficult burden of "plain error" review in their first appeal.  <u>See</u> <u>United States v. Cover</u>, 199 F.3d 1270, 1277 (11th Cir. 2000) (sentencing decision not challenged at the district court is subject to plain error review on appeal).[6]  No reversible error is presented by the district court's declining to grant Defendant's late argument for a one-level reduction under Section 3E1.1(b)(2).

Post-Sentencing Rehabilitation

Defendant finally argues that he is entitled to some downward adjustment

---

[6]Had Defendant raised this issue in his first appeal, he might have been entitled to some measure of relief on "plain error" review.  By failing to appeal the question at that time, he, however,  abandoned this argument. And the district court, on remand, was not required to consider it when our mandate did not require a de novo resentencing.

for his rehabilitative efforts and good behavior during his years of incarceration. Although we wonder whether a defendant facing re-sentencing should be eligible for a downward adjustment for good behavior in prison, we need not address the question in this case. United States v. Pickering, 178 F.3d 1168 (11th Cir. 1999), clearly prohibits a downward adjustment to Defendant's offense level under the Guidelines.

In Pickering, we held that it was an abuse of discretion for the district court to adjust a defendant's offense level, as opposed to his criminal history category, downward for extraordinary rehabilitative acts while awaiting sentencing. Here, Defendant correctly points out that Pickering involved a defendant who had not yet been sentenced at all, while this case deals with a re-sentencing. We view, however, this distinction to be one without a difference.

In Pickering, we analyzed the organizing principles of the Sentencing Guidelines and concluded that a prisoner's efforts at rehabilitation "reflect more strongly on the offender's rehabilitative potential and likelihood of recidivism." Id. at 1175 (quoting United States v. Mogel, 956 F.2d 1555, 1560 (11th Cir. 1992)). We concluded, therefore, that any "departure for post-offense rehabilitation must occur along that (the criminal history) axis." Id. So we specifically rejected Offense Level adjustment for post-offense rehabilitation.

We recognize Defendant's argument that Pickering was a case where the offender had not yet been sentenced at all. But Pickering's reasoning is persuasive to us. The concepts underlying Pickering seem equally applicable to offender's facing re-sentencing. We see no good reason for limiting Pickering's teaching in the way Defendant suggests. Because Defendant is already at the lowest possible criminal history category under the Guidelines (category I), he is eligible for no adjustment for post-offense rehabilitation.

Conclusion

We conclude that the trial court was not clearly erroneous in its findings of fact and that these facts support the determination that Defendant was an organizer/leader in the offenses charged. We also conclude that this court's mandate to the district court for the 1999 Re-Sentencing was limited to determinations of fact for the organizer/leader sentencing level adjustment; thus, the district court did not err in declining to address Defendant's claim that he is entitled to a one-level downward adjustment for the timeliness of his plea. In addition, we extend the Pickering rule and conclude that Pickering does not allow a downward adjustment to the offense level for a defendant's post-offense

15

rehabilitation.  Although <u>Pickering</u> might allow for a downward departure in the criminal history level, Defendant's criminal history category is already at the lowest possible level. He is, therefore, eligible for no decrease due to his good behavior or efforts at rehabilitation.

AFFIRMED.