**UNITED STATES of America,
Plaintiff,**

v.

**Luis Adel BORDON, Luis Bordon,
and Adel Bordon, Defendants.**

**No. 98–0427–CR–KING.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 23, 2004.

---

Alison Whitney Lehr, AUSA, United States Attorney's Office, Miami, FL, Lawrence D. LaVecchio, AUSA, United States Attorney's Office, Ft. Lauderdale, FL, Juan A. Gonzalez, Jr., AUSA, United States Attorney's Office, Miami, FL, for Plaintiff.

Benedict Kuehne, Esq., Sale & Kuehne, P.A., Miami, FL, David Bogenschultz, Esq., Bogenshultz & Dutko, P.A., Ft. Lauderdale, FL, Benson B. Weintraub, Esq., Ft. Lauderdale, FL, for Defendants.

### *SENTENCING ORDER*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon the second re-sentencing of Defendants Luis Adel Bordon, Luis Bordon, and Adel Bordon, and upon Defendants' Memorandum in Opposition to Application of the Feeney Amendment, filed September 24, 2003. On October 24, 2003, the United

States filed its Response to Defendants' Memorandum. On November 3, 2003, Defendants filed their Reply.[1]

## I. Procedural History

On June 9, 1998, Defendants were indicted for conducting an illegal gambling business known as "bolita" in violation of 18 U.S.C. § 1955 (Count I) and conspiring to launder the illegal proceeds for various South Florida "bolita bankers" through their family owned and operated liquor stores in violation of 18 U.S.C. § 1956(h) (Count II). On August 27, 1998, after a nine (9) day jury trial, Defendants were found guilty on both Counts, and the jury returned a special verdict of forfeiture in the amount of $5,756,232.85.[2]

On November 12, 1998, the Court held a sentencing hearing and sentenced Defendants under U.S.S.G. § 2S1.1. Specifically, the Court calculated the base offense level ("BOL") at twenty (20)[3] and found that because the case fell "outside the heartland of cases considered by the U.S. Sentencing Commission when promulgating the guidelines,"[4] ordered a two (2) level downward departure. Consequently, Luis Adel Borden was sentenced to concurrent terms of 57 months of imprisonment, followed by two (2) years of supervised release, and Luis and Adel Borden were sentenced to concurrent terms of 46 months of imprisonment, followed by two (2) years of supervised release.[5] The Court also entered a Preliminary Order of Forfeiture[6] pursuant to 18 U.S.C. § 982(a)(1) in the amount of $5,756,232.85. The Court allowed Defendants to remain on bond pending appeal of their convictions and sentences.

However, no good deed goes unpunished and almost two (2) years later, on July 21, 2000,[7] the Eleventh Circuit issued its opinion ("Bordon I")[8] affirming Defendants' convictions but vacating and remanding the case for re-sentencing. Specifically, the Eleventh Circuit stated that the Court should have sentenced Defendants under U.S.S.G. § 2S1.1(a)(1), and "their base offense level should be 23."[9] The opinion further held that "the district court [had] abused its discretion in departing downward by two levels by failing to make adequate factual findings and by departing on the belief that the mandated sentence was excessive."[10]

Upon remand from the Eleventh Circuit, the parties filed significant sentencing motions, and the Court held two (2) re-sentencing hearings.[11] Thereafter, on July 19, 2001, the Court re-sentenced Defendants under U.S.S.G. § 2S1.1(a)(1). Specifically,

1. At the August 28, 2003 re-sentencing hearing, the Court gave the parties additional time to file their briefs regarding application of the Feeney Amendment, effectively placing the parties on an Eleventh Circuit Court of Appeals briefing schedule. (Tr. of Re-sentencing, DE # 251, 8/28/03, at 42–44.)

2. This is the amount the jury found had been "used" in violation of § 1955 and "involved" in violation of § 1956. See § 1955(d) and 18 U.S.C. § 982(a)(1), respectively.

3. See U.S.S.G. § 2S1.1(a)(2).

4. (DE # 's 93, 95, & 97, 11/24/98, at 6.)

5. (Id. at 2–3.)

6. (DE # 90, 11/9/98.)

7. The Court of Appeals' Mandate was not received by this Court until November 9, 2000. (DE # 142, 11/09/00.)

8. United States v. Bordon, No. 98–5841, 228 F.3d 412 (11th Cir. July 21, 2000) (unpublished panel opinion and mandate), cert. denied, 531 U.S. 1152, 121 S.Ct. 1097, 148 L.Ed.2d 970 (2001) (Bordon I).

9. Id. at 13.

10. Id. at 16–17.

11. The first re-sentencing hearing was held on January 29, 2001. On July 10, 2001, the

the Court stated that pursuant to *Bordon I*, Defendants' base offense level was 23. Moreover, the Court found "no reason to depart from the sentence called for by application of the guidelines" and thus, sentenced Defendants at the low end of the guideline range.[12] Consequently, Luis Adel Bordon was sentenced to concurrent terms of 60 months of imprisonment on Count I and 97 months of imprisonment on Count II, followed by two (2) years of supervised release; and Luis and Adel Bordon were sentenced to concurrent terms of 60 months of imprisonment on Count I and 78 months of imprisonment on Count II, followed by two (2) years of supervised release.[13] At this time, Defendants were remanded to the U.S. Bureau of Prisons to begin serving their sentences.

On July 24, 2001, Defendants appealed their sentences. While Defendants' appeals were pending, the Sentencing Commission amended[14] the money laundering sentencing guidelines under § 2S1.1, which had the effect of lowering the sentencing guideline range for money laundering offenses.[15] Subsequently, on August 23,

2002, the Eleventh Circuit vacated and remanded Defendants' sentences again for re-sentencing ("*Bordon II*").[16] Specifically, the Eleventh Circuit clarified *Bordon I* and held that the district court could exercise its discretion to depart downward so long as it made sufficient factual findings on the record.[17]

Thereafter, on April 30, 2003, Congress passed the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act").[18] A portion of the PROTECT Act, commonly referred to as the Feeney Amendment,[19] amended 18 U.S.C. § 3742.[20] Specifically relevant to this case is the Feeney Amendment's addition of subsection (g)(1) to § 3742, which states that when a case is remanded back to the district court for re-sentencing, "the court shall apply the [sentencing] guidelines … that were in effect. on the date of the previous sentencing of the defendant prior to the appeal." [21]

In their current Memorandum, Defendants seek application of the amended sentencing guidelines and argue that the

---

Court denied Luis Adel Bordon's Motion to Defer Sentencing Hearing until on or after November 1, 2001, and set the case for Final Sentencing Hearing. The second (final) re-sentencing hearing was held on July 13, 2001.

**12.** (DE #'s 170, 172 & 174, 7/19/01, at 7.)

**13.** (*Id.* at 2–3.)

**14.** The amendments to U.S.S.G. § 2S1.1 became effective on November 1, 2001.

**15.** The Government maintains that Defendants' sentencing guideline range would be the same under the amended guidelines. (Resp. at 16–18.) However, for purposes of this Order, the Court need not address this issue and simply notes that the parties disagree on the appropriate guideline range under the amended guidelines.

**16.** *United States v. Bordon,* No. 01–14211, 48 Fed.Appx. 326, 2002 WL 2001164 (11th Cir.

August 23, 2002) (unpublished panel opinion and mandate) (*Bordon II*).

**17.** *Id.* at 6.

**18.** Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. 108–21, 117 Stat. 650 (codified as amended in scattered sections of 18 U.S.C. and 42 U.S.C. (2003)).

**19.** 18 U.S.C. § 3742 (2003).

**20.** 18 U.S.C. § 3742 governs judicial review of final sentences.

**21.** Section 3742(g)(1) is the only section of the Feeney Amendment challenged by Defendants as applied to their re-sentencing. (Defs.' Mem. in Opp'n to Application of the Feeney Amendment, DE # 249, 9/24/03, at 10.)

Court should not apply the Feeney Amendment in this case because: 1) its application to Defendants violates the *Ex Post Facto* Clause; 2) it does not apply to Defendants' case because it only applies to "sentences on remand" and here, Defendants' sentences were vacated and remanded; and 3) it violates the Separation of Powers doctrine. In its Response, the Government argues that: 1) the Feeney Amendment applies in this case and requires the Court to apply the sentencing guidelines in effect at the time of Defendants' original sentencing hearing; [22] 2) the Feeney Amendment does not violate the *Ex Post Facto* Clause because it effects a mere procedural change in the law and does not increase Defendants' punishment beyond that to which they were exposed at the time Defendants committed their offense; and 3) the remainder of Defendants' arguments are irrelevant to this case and without merit. In their Reply, Defendants argue that the Government's procedural/substantive distinction is illusory because application of the Feeney Amendment takes away a benefit Defendants otherwise would have received had the Feeney Amendment not been passed.

## II. DISCUSSION

### A. The Feeney Amendment

1. *Section 3742(g)(1) of the Feeney Amendment Does Not Violate the Ex Post Facto Clause of the U.S. Constitution.*

The U.S. Constitution prohibits Congress from passing any "ex post facto Law." Art. I, § 9, cl. 3. However, what constitutes an *ex post facto* law is defined by the case law. *E.g., Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Notably, in the seminal case of *Calder v. Bull,* Justice Chase explained that "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, *when committed*" constitutes an *ex post facto* law.[23] 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (emphasis added). Thus, "central to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed *when the crime was consummated.*'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)) (emphasis added).

 Furthermore, not "every retrospective law is [ ] an ex post facto law,"[24] and it is well settled that the ex post facto prohibition was not intended "to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Dobbert v. Florida,* 432 U.S. at 293, 97 S.Ct. 2290 (quoting *Beazell v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68, 70 L.Ed. 216 (1925)) (internal quotations omitted). Therefore, a procedural change in the law is not necessarily *ex post facto* "[e]ven though it may work to the disadvantage of a defendant." *Id.* As an example, in *Dobbert,* Florida's death penalty

---

22. The Government also argues that under 18 U.S.C. § 3742(g)(2), the Court is prohibited from sentencing outside the guideline range upon remand for re-sentencing unless the ground for departure was specifically raised in writing at the original sentencing or was held by the appellate court to be a permissible ground for departure. However, Defendants do not challenge § 3742(g)(2).

23. The three other examples noted in *Calder v. Bull* that delineate the scope of the *ex post facto* prohibition are not applicable to this case. 482 U.S. at 390.

24. *Calder v. Bull,* 3 U.S. at 391.

statute [25] was amended to require that the trial judge make the ultimate decision about whether to impose a sentence of death, whereas the statute in effect at the time the defendant committed his crime required a sentence of death unless a majority of the jury recommended mercy. *Id.* at 288–92, 97 S.Ct. 2290. In *Dobbert*, the defendant argued that "the change in the role of the judge and jury in the imposition of the death sentence ... between the time of [defendant's crime] and the time of the trial constitute[d] an ex post facto violation." *Id.* at 292, 97 S.Ct. 2290. However, the Supreme Court rejected the defendant's argument and held that "the change in the statute was clearly procedural." *Id.* at 293, 97 S.Ct. 2290. The Court explained that "[t]he new statute simply altered *the methods employed* in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Id.* (emphasis added).

■ Here, Defendants have failed to demonstrate how application of the Feeney Amendment in this case violates the *Ex Post Facto* Clause. First, § 3742(g)(1) merely directs the Court to apply the sentencing guidelines that were in effect on the date of Defendants' original sentencing.[26] Thus, *by definition*, application of § 3742(g)(1) cannot subject Defendants to a greater punishment than that which Defendants were subjected to at the time their crime was committed. In fact, had the Sentencing Commission *increased* the penalties for money laundering when it amended the sentencing guidelines in No-

vember of 2001, application of the Feeney Amendment would prevent an *ex post facto* violation by requiring the Court to use the guidelines in effect at the time of Defendants' original sentencing. Therefore, because application of the Feeney Amendment to Defendants' re-sentencing does not result in an increase in the amount of punishment Defendants were subject to at the time they committed their offenses, application of § 3742(g)(1) does not violate the *Ex Post Facto* Clause.

Furthermore, while Defendants are correct in their assertion that there is no "bright line test" for distinguishing substance from procedure in *ex post facto* law,[27] this is one of those rare cases where the challenged law is clearly procedural. Here, like in *Dobbert*, the Feeney Amendment has not changed the amount or "quantum" of punishment for money laundering offenses. Instead, § 3742(g)(1) merely tells the Court which guidelines manual to use when re-sentencing a defendant upon remand. Finally, Defendants' argument that subsequent amendments to the money laundering guidelines conferred an expectancy benefit on Defendants is not persuasive. Defendants were never sentenced under the 2001 amended guidelines, nor were the amendments to U.S.S.G. § 2S1.1 given retroactive effect.[28] Therefore, the Court finds that § 3742(g)(1) is a mere procedural change in the law that subjects Defendants to the same (not harsher) sentencing scheme applicable at their original sentencing hearing and must be applied in this case.

---

**25.** The Constitution imposes the same *ex post facto* prohibition against the States as it does Congress. *See* U.S. Const. art. I, § 10.

**26.** Section 3742(g)(1) directs the court to apply the guidelines "in effect on the date of the previous sentencing of the defendant prior to the appeal," which logically means those in effect at the defendant's original sentencing

hearing. In this case, the guidelines in effect at Defendants' first two sentencing hearings were the same.

**27.** (Reply, DE # 255, 11/03/03, at 1.)

**28.** (Government's Resp., DE # 254, 10/24/03, at 13.)

2. *The Feeney Amendment is Applicable Where the Court of Appeals Vacated and Remanded Defendants' Sentences for Re-sentencing.*

Section 3742(g) is entitled "Sentencing upon remand" and provides instructions to "[a] district court to which a case is remanded" for re-sentencing. Here, Defendants appealed their sentences, which were vacated and *remanded* for re-sentencing.[29] Therefore, under the plain language of the statute, the Court finds that Congress intended the Feeney Amendment to apply to Defendants' case.

■ Moreover, a review of the case law cited by Defendants does not support their contention that because Defendants' sentences were "vacated and remanded," the Feeney Amendment should not apply to their re-sentencing. In fact, as the Government correctly notes, it is only where a sentence has been vacated and remanded that the issue of which guidelines apply would arise.[30] Were a more limited remand at issue, the district court's previous ruling as to which guidelines applied would have already been affirmed on appeal.[31] Therefore, the Court finds Defendants' argument to be without merit.

3. *Defendants' Argument that the Feeney Amendment Violates the Separation of Powers Doctrine is Irrelevant to the Issues Presented in this Case.*

This Court is limited by Article III of the U.S. Constitution to decide actual cases and controversies. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). While Defendants direct the Court to several examples of dissatisfaction with various provisions of the Feeney Amendment,[32] none of them shed any light on the issues before this Court. Furthermore, Defendants do not provide the Court with any law in support of their contention that the Feeney Amendment violates the Separation of Powers Doctrine in this case. This Court expresses no opinion on the Feeney Amendment as a whole, nor will it expound on various aspects of the Feeney Amendment that do not bear directly on Defendants' re-sentencing. Therefore, the Court finds Defendants' Separation of Powers argument to be irrelevant to the issues presented by this case.

**B. *Defendants' Sentencing Motions***

1. *Objections to the PSI*

Defendants make the following Objections to the updated Pre-sentence Investigation Report ("PSI"):[33] 1) Defendants object to the guideline calculations and argue that the Court should sentence Defendants under the guidelines currently in effect; 2) Defendants object to the monetary calculation of $5,756, 232.85; and 3) Defendants object to the PSI's recommendation that no valid grounds for downward departure exist.[34]

As discussed above, the Court has rejected all of Defendants' arguments in opposition to application of the Feeney Amendment. Thus, Defendants' first objection is overruled. The Court finds that it is required to apply § 3742(g) to Defen-

---

29. *Bordon II,* No. 01–14211 at 6.

30. (Resp. at 15.)

31. (*Id.*)

32. (Defs.' Mem. in Opp'n to Application of the Feeney Amendment, DE # 249, 9/24/03, at 31–36 (see especially n. 19).)

33. The PSI was updated for Defendants' current re-sentencing on August 20, 2003.

34. This objection will be addressed in Section B(2), *infra,* discussing Defendants' Motion for Downward Departure.

dants' re-sentencing, and therefore, Defendants shall be sentenced under the guidelines in effect at Defendants' original sentencing.[35] Moreover, pursuant to *Bordon I*, the Court finds that Defendants shall be sentenced under U.S.S.G. § 2S1.1(a)(1), and their base offense level shall be 23.[36]

■■■ Defendants' second objection is also overruled. First, the Eleventh Circuit has clearly stated that a vacated criminal sentence does not entitle a defendant to a *de novo* sentencing hearing. *United States v. Davis*, 329 F.3d 1250, 1252 (11th Cir.2003). Moreover, at re-sentencing, a district court may rely on evidence already presented to it at previous sentencings. *Id.* Finally, the Court finds that the amount of $5,756,232.85 has already been found by the jury, this Court, and the Eleventh Circuit to be the amount established at trial that Defendants laundered during the commission of their crimes.

### 2. *Defendants' Motions for Downward Departure* [37]

In his Renewed Motion for Downward Departure,[38] Defendant Luis Adel Bordon argues that a downward departure is appropriate because: 1) Defendant's prospects for rehabilitation are high given his age, education, and lack of criminal behavior; 2) the facts and circumstances of his case fall "out of the heartland" of those cases intended to be punished at the guideline level set by the Sentencing Commission; 3) Defendant's post-offense rehabilitation reinforces his high prospects for rehabilitation; and 4) the totality of the circumstances warrant downward departure. Moreover, in their Sentencing Memorandum and Renewal of Motion for Downward Departure,[39] all three Defendants argue that a downward departure is warranted based on their extraordinary post-offense rehabilitation and good conduct while serving their sentences of imprisonment.

■ A defendant seeking a downward departure from the sentencing guidelines has the burden of proving, by a preponderance of the evidence, that he is entitled to a downward departure. *United States v. Onofre–Segarra*, 126 F.3d 1308, 1310 (11th Cir.1997). Moreover, downward departures "are reserved for unusual cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime" [40] that brings the case outside of the "heartland" of cases considered by the Sentencing Commission when promulgating the guidelines.[41] Additionally, it is the law of this Circuit that "Congress intended to criminalize a broad array of money laundering activity" when it passed § 1956. *United States v. Adams*, 74 F.3d 1093,

---

**35.** The guidelines in effect at Defendants' original sentencing in 1998 and Defendants' first re-sentencing in 2001 were the same.

**36.** *See supra*, n. 9.

**37.** Pursuant to § 3742(g)(2), when re-sentencing a defendant upon remand, a district court may not impose a sentence outside the guideline range unless the ground for departure was specifically raised in writing at the defendant's original sentencing or was held by the appellate court remanding the case to be a permissible ground for departure. § 3742(g)(2)(A) and (B). In the instant case,

Defendants do not challenge this provision of the Feeney Amendment, nor does the Government challenge any of Defendants' grounds for downward departure as violative of this provision.

**38.** (DE # 237, 8/26/03.)

**39.** (DE # 229, 8/21/03.)

**40.** *Onofre–Segarra*, 126 F.3d at 1310 (internal quotations omitted).

**41.** *Koon v. United States*, 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

1102 (11th Cir.1996) (cited with approval in *Bordon I*).

■ Under Eleventh Circuit case law, only a truly extraordinary degree of post-offense rehabilitation will justify a downward departure. *United States v. Pickering,* 178 F.3d 1168, 1174 (11th Cir.1999). Moreover, in *Mesa,* the Eleventh Circuit stated that any downward departure for post-offense rehabilitation may only occur along the criminal history axis and concluded that where a defendant already falls within a criminal history category of I, the defendant is ineligible for an offense level adjustment based on post-offense rehabilitation. *United States v. Mesa,* 247 F.3d 1165, 1171 (11th Cir.2001) (discussing *Pickering*).

■ In the instant case, the Court first finds that pursuant to *Adams,* Defendants' criminal activity is not atypical of the type of crime Congress intended to prohibit when it passed § 1956.[42] Moreover, the Court finds that Defendant Luis Adel Bordon's argument for downward departure based on his high prospects for rehabilitation is insufficient under the law of this Circuit to warrant a departure from the guidelines. Finally, the Court has already denied Defendants' motions for downward departure based upon post-offense rehabilitation at Defendants' original sentencing hearing, having found that Defendants' post-offense rehabilitation did not meet the exceptional degree test.[43] The Court makes the same finding today based on the evidence in the record to date. Furthermore, all three Defendants already fall within a criminal history category of I, and thus, even if Defendants' post-offense re-

habilitation did meet the exceptional degree test, the Court would be unable to grant a downward departure under *Mesa.* Therefore, the Court concludes that the facts and circumstances of this case do not fall outside the heartland of cases considered by the Sentencing Commission when promulgating the guidelines, and thus, Defendants' Motions for Downward Departure must be denied.

## III. CONCLUSION

### A. *Summary of Resolution of Sentencing Issues*

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Memorandum in Opposition to Application of the Feeney Amendment be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that all of Defendants' Objections to the Pre-sentence Investigation Report be, and the same are hereby, DENIED. It is further

ORDERED and ADJUDGED that all of Defendants' Renewed Motions for Downward Departure be, and the same are hereby, DENIED.

### B. *Guideline Calculation*

The Court finds that Defendants shall be sentenced under U.S.S.G. § 2S1.1(a) and that their base offense level is 23. As to Defendant Luis Adel Bordon, the Court finds that his total offense level is 30, criminal history category I, with an impris-

---

**42.** *See also Bordon I,* No. 98–5841 at 16.

**43.** (Tr. of Sentencing Hr'g, 11/12/98, at 83–84.) The Court notes that in November of 2000, the Sentencing Commission amended the guidelines to make post-sentencing rehabilitative efforts an impermissible grounds for

downward departure. However, this provision was not in effect at Defendants' original sentencing, and the Court bases its denial on Defendants' failure to demonstrate an extraordinary degree of post-offense rehabilitation.

onment range of 97 to 121 months, with probation not authorized, supervised release of two (2) to three (3) years, and up to an $11,512,465.70 fine. As to Defendants Luis Bordon and Adel Bordon, the Court finds that their total offense level is 28, criminal history category I, with an imprisonment range of 78 to 97 months, with probation not authorized, supervised release of two (2) to three (3) years, and up to an $11,512,465.70 fine. The Court intends to sentence Defendants within the guideline range. Accordingly, Defendants' third sentencing hearing will be set by separate Order.