[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-15031
Non-Argument Calendar

_____

D. C. Docket No. 04-60301-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK EUGENE KERLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 10, 2007)**

Before BIRCH, BLACK and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Frank E. Kerley appeals his conviction and sentence

for conspiracy to possess with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. After review, we affirm.

## I. BACKGROUND

Kerley pled guilty pursuant to an oral plea agreement. During the plea hearing, the parties entered the terms of the oral plea agreement into the record. Under the terms, Kerley agreed to plead guilty to the drug conspiracy count in exchange for the government dismissing a drug possession count and not objecting to Kerley's receiving a guidelines adjustment for acceptance of responsibility.

During the plea hearing, Kerley's counsel summarized the substance of the plea negotiations, stating, among other things, that the government had agreed not to object to Kerley's request for safety-valve relief pursuant to U.S.S.G. § 5C1.2, as follows:

> [Kerley's Counsel]: . . . [H]e is pleading to one count of conspiracy, . . . and I also understand based on the terms of our – either they are going to agree or not object to the fact by coming forward he is entitled to acceptance of responsibility. The Government is not going to object or possibly agree, depending on the term of art, the guideline safety valve would probably apply if he has the one point that we think that he has as far as prior conviction, and I think the Government would also probably agree or not object, actually, probably affirmatively agree that he is still in the posture of based upon his debriefings and information he is still in a posture of reaping that information into a possible 5K1 or Rule 35.

2

The district court stated that it had reservations about the parties' decision to enter into an oral plea agreement and directed the parties to put every term of the plea agreement in the record. In response, the government clarified that it was making no promises with regard to whether Kerley was eligible for safety-valve relief under U.S.S.G. § 5C1.2, as follows:

> [Government]: If I may, Your Honor, the only thing the Government is agreeing to with respect to Frank Eugene Kerley is two level acceptance for coming forward if the court does accept and adjudicate guilty and the dismissal of Count 2. All of the other things are pending concerning criminal history. I cannot make agreements or obligate the Government with respect to whether he is eligible for safety valve. There are only two agreements to recommend two levels for acceptance, as well as, dismissal of Count 2.

When the district court asked Kerley's counsel if this was his understanding of the plea agreement, Kerley's counsel replied that it was, as follows:

> THE COURT: Mr. Gelety, is that your understanding?
> [Kerley's counsel]: It is. She can't agree – I hate to say anything nice about her, she can't agree because, in fairness, we need to firm up that one point on the criminal history. I am comfortable saying if it is one point as I anticipate I am comfortable she will not object or she will agree the safety valve applies, is that fair enough?

The district court then asked Kerley directly whether that was his understanding of the plea agreement, and Kerley responded that it was.

Kerley's Presentence Investigation Report ("PSI") stated that Kerley, along with his codefendant father and brother, had operated five marijuana grow houses

3

with more than 200 plants. The PSI characterized Kerley as involved in the entire operation, responsible for establishing the houses, recruiting his family members and distributing the marijuana while receiving the majority of the profits. Consequently, the PSI recommended a two-level enhancement under U.S.S.G. § 3B1.1(c) as an organizer. Additionally, because Kerley was an organizer/manager of the offense, the PSI concluded that Kerley was ineligible for safety-valve relief, despite the fact that Kerley had provided a truthful safety-valve statement to the government. With a total offense level of 17 and a criminal history category of I, the PSI calculated Kerley's advisory guidelines range as 24 to 30 months. However, the PSI noted that, under 21 U.S.C. § 841(b)(1)(B), the statutory mandatory-minimum sentence of 60 months' imprisonment applied and became the guideline sentence.

Kerley objected to the organizer enhancement and the safety-valve disqualification. Kerley argued that the government had breached the plea agreement by providing information to the probation office and the sentencing court that resulted in the PSI's recommendation for the organizer enhancement and the denial of safety-valve relief. Kerley also objected to various factual allegations in the PSI relating to Kerley's role in the offense, including the assertions that he was responsible for establishing the marijuana-growing operation, that he supplied

4

equipment and provided instruction on the operation of the grow houses, that he recruited others and that he had profited significantly from the operation.

At the sentencing hearing, the government called Drug Enforcement Agency special agent Dean Wolpert. Wolpert testified that during interviews with Kerley's codefendants, Wolpert learned that Kerley had approached them to participate in the marijuana-growing scheme, provided them with materials and plant "clones," checked on plant growth, processed the product, sold the product to a distributor and received a percentage of the profits from the marijuana grown in their residences. To counter the government's evidence, Kerley called his father, who testified that the operation was "a family thing" with "no boss" and "everybody in charge of their own operation." However, Kerley's father admitted on cross-examination that Kerley provided plant "clones" and equipment, assisted in each harvest, distributed the product and was the only defendant involved in all five grow houses.

After hearing arguments from counsel, the district court found that the plea agreement did not include any terms relating to an organizer/manager enhancement under § 3B1.1(c) or a safety-valve reduction under § 5C1.2. In addition, the district court concluded that Kerley's actions in recruiting, providing plants and equipment, monitoring the plants' growth, harvesting, processing and distributing

the product, and sharing in his codefendants' profits categorized Kerley as an organizer/manager under § 3B1.1(c) and thus rendered him ineligible for safety-valve relief. The district court sentenced Kerley to the statutory mandatory-minimum 60-month sentence. Kerley filed this appeal.

## II. DISCUSSION

### A.   Breach of the Plea Agreement

On appeal, Kerley argues that the government breached the oral plea agreement by presenting evidence to support a finding that he was an organizer/manager of the conspiracy pursuant to § 3B1.1(c) and thus ineligible for safety-valve relief.[1]

The government is bound by promises it makes to a defendant in order to induce the defendant to plead guilty. United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998). In determining whether the government breached the plea agreement, we first determine the scope of the government's promises. Raulerson v. United States, 901 F.2d 1009, 1011 (11th Cir. 1990). Whether the government violated the promises of the plea agreement is judged according to the defendant's reasonable understanding at the time that he entered his plea. United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996).

---

[1]We review de novo whether the government has breached a plea agreement. United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998).

Here, the record shows that the oral plea agreement consisted of three unambiguous terms: (1) Kerley would plead guilty to one count of conspiracy; (2) the government would dismiss the count of possession; and (3) the government would not object to Kerley receiving a two-point reduction for acceptance of responsibility. The plea agreement contained no restrictions on the government with regard to a role enhancement under § 3B1.1(c) or safety-valve relief. Furthermore, Kerley concurred with the government's statement during the plea hearing that the government was making no promise with regard to Kerley's eligibility for a safety-valve reduction. All references to the possibility of Kerley receiving a safety-valve reduction at sentencing were couched in conditional language and clearly did not constitute a promise by the government not to object should Kerley seek safety-valve relief. Therefore, the government did not breach the plea agreement by presenting evidence regarding Kerley's organizer role in the offense.

**B.     Organizer Role Enhancement**

Kerley also argues that the district court erred in finding that he was an organizer pursuant to U.S.S.G. § 3B1.1(c) and that Kerley, therefore, did not meet the criteria for a safety-valve reduction, pursuant to 18 U.S.C. § 3553(f) and

U.S.S.G. § 5C1.2.[2]

The safety-valve provision of § 5C1.2 implements 18 U.S.C. § 3553(f), and allows a court to sentence a defendant without regard to the statutory mandatory-minimum sentence if the defendant meets five criteria. United States v. Brownlee, 204 F.3d 1302, 1304 (11th Cir. 2000).[3] There is no dispute that Kerley met four of the five criteria. The only issue in this appeal is whether Kerley was an "organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. 3553(f); U.S.S.G. § 5C1.2(a). If he was, then the two-point enhancement under § 3B1.1(c) was proper, and Kerley was ineligible for safety-valve relief.[4]

Section 3B1.1(c) provides for a two-level increase in a defendant's offense level if he was "an organizer, leader, manager, or supervisor in any criminal

_____

[2]We review the district court's factual determinations in denying a safety-valve reduction for clear error. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). We also review for clear error the district court's determination of a defendant's role in the offense. United States v. Mesa, 247 F.3d 1165, 1168 (2001). However, the district court's application of the guidelines to its factual findings is reviewed de novo. United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998).

[3]To be eligible for a safety-valve reduction, the defendant must show that: (1) he has no more than one criminal history point; (2) he did not use violence or threats of violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) he was not an organizer, leader, manager or supervisor of the offense "as determined under the sentencing guidelines" and was not engaged in a continuing criminal enterprise; and (5) he truthfully provided to the government all information and evidence about the offense. 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(a)(1)-(5).

[4]While the government bears the burden of proving the applicability of a § 3B1.1(c) managerial role enhancement, United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993), the defendant bears the burden of proving his eligibility for the safety-valve reduction. Cruz, 106 F.3d at 1557.

activity . . . ." U.S.S.G. § 3B1.1(c). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Jiminez, 224 F.3d 1243, 1251 (11th Cir. 2000); see also U.S.S.G. § 3B1.1 cmt. n.2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."). Factors to consider in determining whether the defendant qualifies for the § 3B1.1(c) role enhancement include: (1) the exercise of decision-making authority; (2) the nature of participation; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, cmt. n.4.

Here, the record shows that the district court did not clearly err in concluding that Kerley was an organizer/manager under § 3B1.1(c). The government presented evidence that Kerley had great influence over his codefendants and played a significant role in organizing and maintaining the marijuana-growing operation. Kerley initiated the scheme to grow marijuana plants at the five houses; recruited his codefendants to join in the scheme; provided his codefendants with equipment and plants; checked on their operations;

9

harvested and processed the marijuana from their plants and took it to a distributor; and took a significant share of his codefendants' profits from the sales.

Because Kerley was an organizer/manager, the district court also did not clearly err in finding that Kerley was ineligible for safety-valve relief.

**AFFIRMED.**