[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12 2007
THOMAS K. KAHN
CLERK

No. 06-10487
Non-Argument Calendar

_____

D. C. Docket No. 05-00099-CR-5-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER THAI HOANG,
a.k.a. Ti Bo,
a.k.a. Peter Hoang,

Defendant-Appellant.

_____

No. 06-10488
Non-Argument Calendar

_____

D. C. Docket No. 05-00101-CR-3-003-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER THAI HOANG,
a.k.a. Ti Bo,

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(June 12, 2007)**

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

In these consolidated appeals, Peter Thai Hoang appeals his 236-month sentence for conspiring to distribute and to possess with the intent to distribute methylenedioxymethamphetamine ("MDMA") and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 and 846, and a concurrent 236-month sentence for conspiring to launder money, in violation of 18 U.S.C. § 1956(h). On appeal, Hoang argues the district court erred in calculating his offense level under the Sentencing Guidelines by (1) imposing a 4-level enhancement, pursuant to U.S.S.G. § 3B1.1(a), for Hoang's leadership role in the drug conspiracy; and (2) imposing a 2-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), based on a co-conspirator's possession of a firearm. Upon thorough review of the record and careful consideration of the parties' brief, we affirm.[1]

_____

[1] Hoang also challenges the district court's application of § 3B1.1(c) in calculating his offense level for the money laudering conspiracy. Under the Guidelines, counts which are closely

A district court's sentencing determinations on whether a defendant qualifies for a minor-role adjustment and whether a defendant possessed a firearm are findings of fact that we review for clear error. United States v. De Varon, 175 F.3d 930, 934 (11th Cir.) (en banc) (minor-role adjustment), cert. denied, 528 U.S. 976 (1999); United States v. Alred, 144 F.3d 1405, 1420 (11th Cir. 1998) (possession of a firearm). We have observed,

> a trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review. So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law . . . it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous.

De Varon, 175 F.3d at 945 (quotation and citation omitted).

The parties are familiar with the underlying facts of the conspiracies and we do not recount them again here. According to the facts of the presentence investigation report ("PSI"), which the district court adopted, and the testimony presented at Hoang's sentencing hearing, Hoang was arrested as part of an

---

related are combined into a single group. See U.S.S.G. § 3D1.2(c). Laundering money is considered to be closely related to the offense that produced the laundered funds -- in this case, the drug trafficking conspiracy. See U.S.S.G. § 2S1.1, comment. (n.6). The total offense level for a group is the highest offense level of the counts in the group. U.S.S.G. § 3D1.3(a). Because Hoang's total offense level was determined by grouping his two counts of conviction together and both counts had the same offense level, any alleged error relating to the scoring of the money laundering conspiracy count would not affect the application of the Guidelines to Hoang's case and is, therefore, harmless error. See U.S.S.G. § 3D1.3(a); Williams v. United States, 503 U.S. 193, 202-03 (1992) (holding that an incorrect application of the Guidelines by the district court does not need to be remanded when the error was harmless and would not affect the defendant's sentence).

international drug trafficking conspiracy that was under Vietnamese leadership and stretched across several continents. The primary purpose of the international drug conspiracy involved laundering profits from MDMA sales. To that end, the conspiracy consisted of local cells, or "franchises," in various parts of the United States, including Louisiana, Texas, Mississippi, and Florida.

John Cao, Hoang's co-defendant, established a local cell in Pensacola, Florida. Appellant Hoang and his brother, Paul Hoang, were the two "key leaders" or "first level distributors" in the Pensacola-based cell, and Title III wiretaps[2] documented 20 or more conversations between appellant Hoang and Cao regarding drug distribution and laundering of the proceeds. The PSI noted that appellant Hoang actively negotiated the price of the drugs with the suppliers and directed the activities of other. The PSI additionally described distributions from the first-level distributors to "second or mid-level distributors" of large amounts of MDMA supplied by Cao and Mike Pham to the Hoangs. In addition to trafficking MDMA and laundering the proceeds of the scheme, the Pensacola cell also trafficked kilogram-quantities of cocaine, under the primary leadership of appellant Hoang, and marijuana, under the primary leadership of Paul Hoang.

---

[2] See Title III of the Omnibus Crime Control and Safe Streets Act, Pub. L. 90-351, 82 Stat. 212 (1968) (codified at 18 U.S.C. § 2510 et seq.).

4

After a jury convicted him of both conspiracy counts, appellant Hoang proceeded to sentencing. The PSI grouped Hoang's offenses together, pursuant to U.S.S.G. § 3D1.2(c), and calculated the base offense level for the money laundering offense by looking at the offense level for the offense that produced the laundered funds, which in this case was 34, pursuant to U.S.S.G. § 2D1.1. The PSI then recommended the following adjustments to Hoang's offense level: (1) a two-level increase, pursuant to U.S.S.G. § 2D1.1(b)(1), because a dangerous firearm was possessed; (2) a two-level increase, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because Hoang was convicted under 18 U.S.C. § 1956; (3) a four-level increase, pursuant to U.S.S.G. § 3B1.1(a), because Hoang was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and (4) a three-level downward adjustment, pursuant to U.S.S.G. § 3E1.1(a) and (b), for acceptance of responsibility. With an adjusted offense level of 39 and a criminal history category I, Hoang faced a Guidelines sentencing range of 262-327 months' imprisonment.

At the sentencing hearing, as to the drug trafficking conspiracy, the district court overruled Hoang's objection to the § 2D1.1(b)(1) enhancement, finding that because it was reasonably foreseeable that the conspiracy would involve a gun, the enhancement applied to Hoang based on his co-conspirator's possession of a

firearm. The district court also overruled Hoang's objection to the assessment of the § 3B1.1(a) four-level enhancement, noting that the evidence of Hoang's leadership activities in the conspiracy was "overwhelming" because there was evidence that Hoang recruited people, provided drugs on consignment, and arranged for deliveries. After a three-point adjustment for acceptance of responsibility, Hoang's adjusted offense level was 37.

The district court then calculated the money laundering conspiracy as having a base offense level of 34, and assessed three two-point increases for the use of a firearm by others, U.S.S.G. § 2D1.1(b)(1); Hoang's conviction for violating 18 U.S.C. § 1956, U.S.S.G. § 2S1.1(b)(2)(B); and Hoang's role in the offense, U.S.S.G. § 3B1.1(c). After a three-point reduction for acceptance of responsibility, Hoang's adjusted offense level was 37.

Since the offense level for both conspiracies was 37, the overall offense level was 37. With a criminal history category I, Hoang's Guidelines imprisonment range was 210-262 months. The district court imposed a 236-month term of imprisonment on each count, with the sentences to run concurrently. This appeal followed.

First, Hoang argues the district court erred by imposing a four-point enhancement under U.S.S.G. § 3B1.1(a) based on his aggravating role in the drug

conspiracy. Hoang claims that all of his interactions with other conspirators involved merely buying and selling drugs and that he did not have the authority or control required to be considered an organizer or a leader under the Sentencing Guidelines.

"The government bears the burden of proving by a preponderance of the evidence that the defendant had an aggravating role in the offense." United States v. Yeager, 331 F.3d 1216, 1226 (11th Cir. 2003). Section 3B1.1(a) states that, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." A participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). In determining the defendant's role in the offense, the district court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning and organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). "Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or

leadership." United States v. Ndiaye, 434 F.3d 1270, 1304 (11th Cir.), cert. denied, 127 S. Ct. 128 (2006) (citation and quotation omitted).

While Hoang is right that the level of control, leadership, or influence needed to justify an enhancement under § 3B1.1(a) requires more than merely a buyer/seller relationship, see Alred, 144 F.3d at 1422, the record contains overwhelming evidence of Hoang's control and leadership over others, such as Perry Williams who accepted and processed kilogram-quantities of cocaine at his house, all at Hoang's direction. Cf. United States v. Mesa, 247 F.3d 1165, 1169-70 (11th Cir. 2001) (distinguishing Alred based on the presence of evidence that the defendant directed people who stored and delivered cocaine, who unloaded and prepacked vehicles, and who translated drug transactions). Moreover, the government presented abundant evidence concerning Hoang's efforts to recruit new members for all levels of the drug trafficking conspiracy, and that his efforts involved the direction or recruitment of at least five other co-conspirators. Simply put, a preponderance of the evidence supported the district court's finding that appellant Hoang exercised control and leadership over the individuals who bought drugs from him. Accordingly, the district court's finding that Hoang was an organizer or leader of the criminal enterprise was not clearly erroneous. See De Varon, 175 F.3d at 945.

We likewise are unpersuaded by Hoang's challenge to the district court's application of the two-point enhancement under U.S.S.G. § 2D1.1(b)(1) based on the court's finding that it was reasonably foreseeable to Hoang that a co-conspirator would possess a firearm in the course of the drug trafficking conspiracy. Under § 2D1.1(b)(1), a two-point enhancement is warranted if a dangerous weapon, including a firearm, was possessed. We have held that, in order for the § 2D1.1(b)(1) firearm enhancement to be applied based on a co-conspirator's gun possession, the government must show the following by a preponderance of the evidence: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999).

Here, one of the firearms attributed to Hoang was possessed by his brother and co-conspirator, Paul Hoang. Paul Hoang's possession of a firearm supported application of the § 2D1.1(b)(1) enhancement to appellant Hoang's offense level because it was reasonably foreseeable, given the lucrative and illegal nature of the drugs involved and the common knowledge that guns are tools of the drug trade, as well as Hoang's leadership position in the conspiracy, that a co-conspirator would

9

possess a firearm.  See United States v. Pham, 463 F.3d 1239, 1245-46 (11th Cir. 2006).  Moreover, as we observed in co-conspirator Mike Pham's appeal, the large amounts of drugs and money and the vastness of this particular conspiracy further support the enhancement.  Id. at 1246.  The government also presented Title III phone interceptions in which Hoang actually discussed using a firearm in connection with settling business.  On this record, the four Gallo requirements are satisfied.  Paul Hoang was a co-conspirator who possessed the firearm in furtherance of the conspiracy at a time when appellant Hoang was a member of the conspiracy.  And the firearm use was reasonably foreseeable to appellant Hoang because of the nature of the drug conspiracy in which Hoang was involved.  See Pham, 436 at 1246.  Therefore, the district court did not clearly err in applying the § 2D1.1(b)(1) enhancement.  See id.

**AFFIRMED.**